# United States Court of Appeals

## For the First Circuit

No. 01-2357

ITAMAR LUBETZKY,

Plaintiff, Appellant,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Boudin, Chief Judge,

Lynch, Circuit Judge,

and Schwarzer,[*] Senior District Judge.

Timothy J. Burke for appellant.
Gretchen M. Wolfinger, Tax Division, Department of Justice,
with whom Eileen J. O'Connor, Assistant Attorney General, Michael
J. Sullivan, United States Attorney, and Bruce R. Ellisen, Tax
Division, Department of Justice, were on brief for appellee.

December 29, 2004

---

[*]Of the Northern District of California, sitting by
designation.

**BOUDIN**, <u>Chief Judge</u>.  Itamar Lubetzky appeals from a jury verdict holding him personally liable for the federal withholding taxes of MediaForum, Inc. for the six quarters of July 1, 1996 through December 31, 1997.  Lubetzky's central challenge is to the sufficiency of the evidence, but his appeal also invites attention to the murky standards for imposing liability.  We begin with a brief summary of the statute, the background events and the legal proceedings that followed.

Employers are required to deduct from employee wages--and turn over to the Internal Revenue Service--social security, Medicare and federal income taxes.  Although the primary liability for failing to do so is the employer's, a penalty for such a failure equal to the unpaid tax can be collected from "[a]ny person" who was "required" but "willfully" failed to pay over the withheld taxes.  I.R.C. § 6672 (2000); <u>Slodov</u> v. <u>United States</u>, 436 U.S. 238, 250 (1978).  Such persons are described in the case law as "responsible persons" and a body of decisions has refined the concept, albeit imperfectly.  <u>See</u> Mertens, <u>Law of Federal Income Taxation</u> §§ 55:107-:113 (1997 & 2004 Supp.).

In this case the evidence--taken most favorably to the verdict, <u>see</u> <u>PH Group Ltd.</u> v. <u>Birch</u>, 985 F.2d 649, 653 (1st Cir. 1993)--showed the following.  In the fall of 1995, MediaForum, an American subsidiary of the British company UCM, Ltd., was engaged in producing interactive software and multimedia products.

MediaForum's president was Peter Ponton, but UCM president Alan Saunders also took an active role in managing MediaForum. In September 1995, MediaForum hired Lubetzky as an independent consultant to design a financial management system for the company.

In January 1996, Lubetzky's consultancy was extended and he began to prepare financial reports, including lists of "aging" debts and receivables. Ponton (or in his absence Saunders) reviewed these lists weekly and told Lubetzky which bills to pay; Lubetzky would then print up the checks and give them to Ponton or Saunders to sign.

In June 1996, Lubetzky joined MediaForum as an employee. He was appointed treasurer, thereby making him (under the by-laws) chief financial officer as well. Apparently he held himself out as an "executive vice president" when dealing with customers (and the IRS). At trial he described himself as a glorified bookkeeper, saying that he was unaware of his treasurer designation. From other evidence the jury could have disbelieved this disclaimer.

Even before June 1996 Lubetzky had check-signing authority, along with Saunders, Ponton and two other employees. Over the 14-month period from January 1996 through February 1997, Lubetzky signed over $200,000 in payroll checks as well as checks to suppliers, subcontractors and others. Although formally two signatures were required, the government at trial offered checks dating back to July 4, 1996, showing Lubetzky as the sole signer.

From June 1996 onward, Lubetzky also began to prepare and sign MediaForum's federal employment tax returns.

Lubetzky's filings after he assumed office began with the company's March 1996 return which, he discovered, had not been previously filed. When he informed Saunders and Ponton of this fact--and the fact that the company's taxes had not been paid--Saunders said that the taxes would be paid when money was available but that suppliers had to be paid now so the company could remain in business. Lubetzky again reminded his seniors of the problem in December 1996. Lubetzky filed three of MediaForum's 1996 quarterly returns, but paid none of the taxes.

In early 1997 UCM sold MediaForum's main assets, and by February 1997 Saunders had removed Ponton and the company's vice president. Lubetzky told Saunders that someone needed to take charge of the remaining operations--the company continued to do some work--and in April 1997 Lubetzky was appointed company president, saying that he proposed only to be a "caretaker" and wanted no corporate authority. Nevertheless, he continued to have check-writing authority and regularly filed employment tax returns--but without making payment (except for April and May 1997).

In September 1997, MediaForum ceased operations. Lubetzky asserted at trial that he then thought his role had come to an end; but, at the behest of the IRS, in January 1998 he filed returns for the company for July-December 1997. In the last three

-4-

months of 1997 the company received customer payments amounting to over $190,000, and it continued to hold some assets in a bank account through the close of the year.

In September 1999, the IRS assessed a penalty of $78,239.45 against Lubetzky for willful failure to pay over MediaForum's federal withholding taxes for 1997 and part of 1996. Lubetzky paid the small amount due for the final quarter of 1997 and brought suit in the federal district court in Massachusetts, seeking a refund and an abatement of the balance claimed by the IRS. The IRS counterclaimed for the balance and a three-day trial was held.

The jury found for the government both on the refund claim and the counterclaim, concluding in a special verdict that Lubetzky had become a responsible person on July 4, 1996, and that he had willfully failed to pay taxes due during all six quarters at issue (the last two in 1996 and all four in 1997). The district court entered judgment for the government--with interest the amount due was now over $90,000--and denied Lubetzky's motion for judgment as a matter of law or, in the alternative, for a new trial. This appeal followed.

With one exception (discussed below), all of Lubetzky's claims on appeal rest on the same contention: that the evidence was insufficient to allow a reasonable jury to find him liable. On this central claim, our review is independent of the district judge

but deferential to the jury unless the law was misstated or demonstrably misunderstood.  See Heinrich v. Sweet, 308 F.3d 48, 59-60 (1st Cir. 2002), cert. denied, 539 U.S. 914 (2003); cf. Vinick v. United States ("Vinick II"), 205 F.3d 1, 6-7 (1st Cir. 2000).  Inferences are drawn, and credibility issues generally resolved, in favor of the verdict.  United States v. Sepulveda, 15 F.3d 1161, 1173 (1st Cir. 1993), cert. denied, 512 U.S. 1223 (1994).

The statute, quoted in pertinent part above, imposes the penalty on a party who "willfully" fails to pay over the taxes due when required to do so.  Although in some contexts willfulness requires a wicked intent or consciousness of wrongdoing, see Screws v. United States, 325 U.S. 91, 101-03 (1945), here it is enough if a defendant knows that the taxes are due from the company and yet disburses funds for other purposes or knowingly fails to pay the required sum to the government.  See Stuart v. United States, 337 F.3d 31, 36 (1st Cir. 2003) (citing cases); Caterino v. United States, 794 F.2d 1, 6 (1st Cir. 1986) (same), cert. denied, 480 U.S. 905 (1987).

At trial Lubetzky admitted that in the course of his warnings to others that the taxes were due, he was warned in turn by the company's legal adviser that he might himself be held liable for non-payment and said, "Well, that's horrible."  When this occurred is not entirely clear but, in any event, on this appeal

Lubetzky does not contest the jury's finding that he acted willfully.

As to the "responsible person" issue, the statute--which does not use this term--speaks of persons "required" to collect, account and pay over ("and" is to be read as "or," Slodov, 436 U.S. at 250). There are also a few general principles of some relevance: there can be more than one person so required, Stuart, 337 F.3d at 36; the statute has generally been read broadly to protect the government's interest in getting its money, see Vinick v. Commissioner ("Vinick I"), 110 F.3d 168, 172 (1st Cir. 1997), and, in the present procedural context, the burden was upon Lubetzky to prove at trial that he was not a responsible person, Stuart, 337 F.3d at 36.

Nevertheless, there is a surprising gap at the center of the statute: it nowhere says who is so required or whether "required" refers to some statutory concept, common law doctrine, company by-laws or actual practice, or some mixture of all these. In response, the case law has spawned a laundry list of criteria that is well developed but moored only to some vague concept of power or control. See, e.g., Vinick II, 205 F.3d at 7-8.

The IRS definition is equally bland, saying that "[r]esponsibility is a matter of status, duty, and authority." Internal Revenue Manual § 1.2.1.5.14(3) (2004). More helpfully, it says that "[i]n general, non-owner employees of the business

-7-

entity, who act solely under the dominion and control of others, and who are not in a position to make independent decisions on behalf of the business entity" will not be liable. Id. This might at first blush seem helpful to Lubetzky, but its application to corporate officers is left obscure.

So, we are back to the case law criteria to provide a framework. These indicia are said to include whether the defendant is a member of the board or an officer, has a stake in the company, is active in management and personnel decisions, makes decisions as to payment of bills, controls bank accounts, and has check-signing authority. Vinick II, 205 F.3d at 7-8. Vinick II also said of this list that corporate title is not decisive, id. at 8, and that the last three criteria are particularly important. Id. at 9. So far we are dealing with "the law."

When it comes to applying the law to the case at hand, the factfinder gets much greater deference. As to raw facts (e.g., what happened, who said what, past company practice), the standard of review at a jury trial is whether a rational jury could make such a finding. See Gillespie v. Sears, Roebuck & Co., 386 F.3d 21, 25 (1st Cir. 2004). Further, the weighing of the factors and their application to the facts is treated in legal jargon as a mixed question--law application is a more accurate label--and reviewed with varying degrees of deference. See Vinick II, 250

F.3d at 6; <u>In re Extradition of Howard</u>, 996 F.2d 1320, 1328 (1st Cir. 1993).

Turning now to the facts of this case, we think the jury could have found from the evidence that Lubetzky from the start of the critical six quarters was more than a bookkeeper; that he held the formal position of treasurer and chief financial officer; that in practice he had special responsibility for preparing lists of debts to be paid and for filing the withholding tax returns; that he had authority to sign checks; and that he was, according to a number of the relevant criteria, a "responsible" person--with one major qualification.

The qualification is that during the period before he became president in April 1997, Lubetzky reasonably understood that he was expected by Saunders and Ponton to pay only the bills that one of them approved, and that Saunders wanted the tax payments delayed. Lubetzky so testified, adding that he would have regarded himself as "stealing" if he had paid out checks over management's objection. He was supported by another witness. No directly contradictory evidence is noted by the government. There is no obvious basis on which the jury could have disbelieved this testimony.

It would be easy, and perhaps conventional, to resolve this case by saying that the jury took everything into account and then reasonably, although not inevitably, "found" Lubetzky was a

responsible party. Reserving some flexibility for the jury in weighing circumstances, as well as finding raw facts, makes sense in cases like this one--as it does in accident cases where the jury decides whether the known facts add up to negligence. Often, the jury's legal calculus is buried because one cannot know just what facts it found.

Nevertheless, here Lubetzky is entitled to claim that regardless of the jury's view, a court ought not hold him responsible where, as he has established, he could not have paid out substantial sums for the taxes without ignoring the directions of the company's highest officials and quite possibly losing his job. The IRS regulation quoted above concedes that a mere bookkeeper who only wrote checks would not be liable in such a case even though he knew that taxes were unpaid.

So, unless we avert our eyes, the jury verdict in this case depends on the legal proposition that someone in Lubetzky's position had to confront top management and quite possibly resign from his position if he wanted to avoid the risk of liability for the period before he became president (liability afterwards is even harder to avoid). This is a harsh dilemma with which to confront someone, and we have found little case law that deals with the issue in such stark terms. Perhaps this is not surprising, given the unusual starkness of the choice in this case.

However, what case law exists at the circuit level is mostly favorable to the government.  Thus, in <u>Brounstein</u> v. <u>United States</u>, 979 F.2d 952 (3d Cir. 1992), a former salesman who was the (perhaps nominal) president and (clearly actual) assistant treasurer and check-writer was held liable even though the Third Circuit assumed <u>arguendo</u> that Brounstein's effective superior might have told him not to pay--and might have fired Brounstein had he done otherwise.  "Instructions from a superior not to pay taxes do not," said the court, "take a person otherwise responsible under [the statute] out of that category."  <u>Id.</u> at 955.

Similar in effect is <u>Roth</u> v. <u>United States</u>, 779 F.2d 1567 (11th Cir. 1986), where the Eleventh Circuit said:

> In our view, no instruction by the president or the majority owner of [the corporation] could effectively bar an otherwise responsible officer from paying these funds in accordance with the law.

<u>Id.</u> at 1572; <u>accord</u> <u>Howard</u> v. <u>United States</u>, 711 F.2d 729, 734 (5th Cir. 1983) ("The fact that Jennings might well have fired Howard had he disobeyed Jennings' instructions and paid the taxes does not make Howard any less responsible for their payment.").

Our own decision in <u>Vinick II</u> is perhaps the best case in Lubetzky's favor, but it is easily distinguishable.  Vinick was formally the treasurer of a small company in which he was an investor; but--unlike Lubetzky--he was neither paid by the company nor engaged in day-to-day business affairs, had no office at the

-11-

company, and did not sign checks in the relevant time frame. Throughout the period in question, Vinick was a CPA with his own private practice elsewhere. 205 F.3d at 4.

We have not separately addressed the period after Lubetzky became president because, if anything, his responsibility was then enhanced--although perhaps not greatly, given his company's dominance by its U.K. parent and by Saunders. Nor, in light of our disposition, is it necessary to consider whether Lubetzky's authority in this later period independently obliged him to make payments for the earlier three quarters if the cash had been on hand. Compare Slodov, 436 U.S. at 259-260.

We also need not address in detail Lubetzky's challenge to the jury's finding that he became a responsible person on July 4, 1996. Lubetzky became an officer shortly before July 1996, and at trial the earliest check on which Lubetzky was the sole signer was dated July 4, 1996; the jury was entitled to find that this was the first day that Lubetzky had the requisite degree of control over MediaForum's financial affairs to render him a responsible person.

Obviously, on this record, the party most directly responsible in this case for the failure to pay was Saunders, who gave the fatal instruction to Lubetzky. This is certainly true for the first three quarters, and most likely for a significant portion of the $90,000 plus interest now due. There is some possibility

-12-

that Saunders--and perhaps Ponton--may be liable to Lubetzky, <u>see</u> I.R.C. § 6672(d), but that issue is not before us.

Lubetzky has also sought review of the district court's denial of his alternative motion for a new trial.  The district judge can order a new trial where the verdict is against the weight of the evidence--Lubetzky's main claim here.  But such decisions are reviewed only with great deference, <u>Stuart</u>, 337 F.3d at 37, and in this instance the denial was not an abuse of discretion.

<u>Affirmed</u>.