# United States Court of Appeals
## For the First Circuit

---

No. 04-1121

PAUL JEAN,

Plaintiff, Appellant,

v.

UNITED STATES,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Douglas P. Woodlock, U.S. District Judge]

---

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

---

Timothy J. Burke for appellant.
Michelle B. O'Connor, Attorney, with whom Eileen J. O'Connor,
Assistant Attorney General, and Kenneth L. Greene, Attorney, Tax
Division, Department of Justice, were on brief for appellee.

---

February 3, 2005

---

**STAHL**, **Senior Circuit Judge**.    The Internal Revenue Service ("IRS"), acting pursuant to 26 U.S.C. § 6672, assessed a penalty against Appellant Paul Jean ("Paul"), an employee of Focus Financial Services ("Focus"), for unpaid income and social security taxes withheld from the wages of Focus' employees in 1992.  Paul paid a portion of the assessment and, after exhausting his administrative remedies, sued the IRS in the United States District Court for the District of Massachusetts for a refund and an abatement of the balance of the assessment.[1]  The government filed a counterclaim, seeking to recover the balance of the assessment. At the close of the evidence at trial, the district court entered judgment in Paul's favor.  Paul, then, filed a motion to recover his administrative and litigation costs under 26 U.S.C. § 7430. The district court, in denying the motion, found that the government was substantially justified in issuing the assessment and pursuing the litigation.  Paul now seeks review of that denial. Finding no error, we affirm.

## I.  Background

In 1985, Michael Pottle ("Pottle") incorporated Focus. He served as Focus' president and treasurer and was the company's sole shareholder.  Pottle hired George Jean ("George") to serve as

_____

[1]See 28 U.S.C. § 1346(a)(1); Ruth v. United States, 823 F.2d 1091, 1093 (7th Cir. 1987) ("The taxpayer is permitted to challenge an assessment [under § 6672] in the district court merely by paying a portion of the assessment and then seeking a refund.").

the company's vice-president and general manager. Initially, Focus provided debt collection services out of an office in Plymouth, Massachusetts. By 1987, Focus also had a credit reporting business in Lynn, Massachusetts.[2] Notwithstanding this expansion, even after 1987, all of the company's bills were paid out of its Plymouth office.

In 1987, Pottle hired George's son, Paul, to work part-time as a bookkeeper for Focus. Paul was given full signatory authority over Focus' bank accounts; that is, he had the power to disburse funds from the company's accounts.[3] Paul, who worked in the Plymouth office, signed many of the checks issued by Focus, including checks issued to cover Focus' tax liabilities.

Sometime in 1991, Focus began having financial difficulties, which culminated in its failure to pay the IRS taxes that had been withheld from its employees' wages for the first three quarters of 1992. During those quarters, however, Focus continued to pay its employees and other creditors.

Paul signed most of the checks that Focus issued in the first two quarters of 1992--he signed 114 checks, transferring $284,353.22 to Focus' creditors, of which $202,360.96 was paid to creditors other than the IRS. On August 2, 1992, during the third

---

[2]Focus ceased operating the credit reporting business and closed its Lynn office in 1991.

[3]Paul was listed as an authorized signatory on the bank cards for Focus' accounts.

quarter, Paul relinquished his signatory authority; apparently, he feared being held liable for Focus' failure to pay the IRS.

On December 20, 1994, pursuant to 26 U.S.C. § 6672, the IRS proposed to assess Paul for Focus' unpaid withholding obligations. The IRS viewed Paul as a "responsible person" of Focus who had willfully failed to pay the company's taxes. Prior to the issuance of the proposed assessment, in May 1994, Pottle filed with the IRS a statement in which he averred that he and George were the only persons with authority over Focus' finances. Pottle failed to mention that, during much of the relevant period, Paul had been authorized to disburse, and had in fact disbursed, money from Focus' bank accounts. Paul appealed the proposed assessment to the IRS Office of Appeals on January 12, 1995. On June 28, 1996, the Office of Appeals rejected Paul's challenge.

On August 12, 1996, the IRS assessed a penalty against Paul in the amount of $31,825.66 for Focus' tax liabilities for the first three quarters of 1992, the period from January 1, 1992 to September 30, 1992. The IRS made a like assessment against George. Paul and George, on November 16, 1999, each paid the IRS $84.00 and filed refund claims with the agency. The claims were denied, and on June 30, 2000, Paul and George sued the IRS in district court for refunds of the sums paid and an abatement of the balance of the assessment. In response, the government filed counterclaims

against Paul and George for the portion of the assessment that remained unpaid.[4]

During discovery, Pottle and Paul were deposed.[5] At his deposition, Paul stated that he had the authority to write checks to pay Focus' smaller bills, "certainly [invoices] under $100, for example," without first obtaining approval from Pottle or George. However, he said that he did not have the authority to pay Focus' "larger invoices--telephone bills, for example," without obtaining prior approval. Paul testified that there were no "specific . . . criteria that [were] employed [to distinguish the smaller bills from the larger ones]."

In addition, Paul acknowledged that once Focus began experiencing financial difficulties, he participated in daily meetings with Pottle and George during which Focus' financial obligations were discussed and it was decided which bills were to

---

[4]It appears that, in 1998, the IRS reduced the amount of the assessment against Paul because Pottle had paid Focus' taxes for the third quarter of 1992. Accordingly, the government insists that it never sought to collect third quarter taxes from Paul in connection with the litigation in question. Because neither the allegations in the government's counterclaim nor its subsequent behavior in the litigation rendered its position as to the third quarter taxes clear, in deciding the issues raised in this appeal, we assume that the IRS sought to collect third quarter taxes from Paul.

[5]George was also deposed, but neither party has identified his deposition as relevant to this appeal.

be paid.[6]  The extent of Paul's involvement in the meetings and in the ultimate decision as to which creditors were to be paid is unclear from the deposition transcript.  Paul also admitted that, in 1992, he was aware that Focus had not paid its taxes but that it was paying its employees' salaries and other obligations.

Pottle testified at his deposition that Paul lacked the authority to make independent spending decisions.  But, Pottle also stated that, at all relevant times, George was responsible for the day-to-day operations of the company's business in Plymouth.  And, Pottle said that he rarely visited the Plymouth office after the first few years of Focus' existence.

Following the close of discovery, Paul filed a motion for summary judgment in which he asserted that the undisputed facts established that he was not a person responsible for the payment of taxes by Focus because he never had the authority to decide which of Focus' creditors were to be paid.  At the same time, Paul filed an affidavit in which he maintained that he was nothing more than a clerical employee of Focus; he insisted that he:  (1) "did not have the authority . . . to determine which creditors were to be paid"; (2) "was not an officer, shareholder or director"; (3) "was controlled by [] Pottle"; (4) "did not have the actual ability to

---

[6]Paul testified that "as the financial situation grew tighter, then virtually any bill and any creditor would have been paid in consultation with [] Pottle."

establish financial policies or procedures"; and (5) "did not have the ability to hire or fire employees."

The government opposed the motion, arguing that the scope of Paul's authority to determine which of Focus' creditors were to be paid was in dispute. The government pointed out that, at his deposition, Paul testified that he had the authority to pay certain creditors without prior approval and participated in daily meetings with Pottle and George concerning Focus' financial obligations.

The district court allowed the motion in part and denied it in part. It concluded that, for the period from January 1, 1992 through August 1, 1992 (the first, the second, and part of the third quarter), there was a genuine dispute as to whether Paul had the requisite decision-making authority to render him a person responsible for payment of taxes by Focus. By contrast, it reasoned that Paul's relinquishment of his check-signing authority on August 2, 1992 left him in a position where, after that date, he clearly lacked authority to pay taxes. Therefore, the district court allowed the motion as to the period from August 2, 1992 through September 30, 1992 and denied it as to the period from January 1, 1992 through August 1, 1992.

After the close of evidence at trial, Paul filed a motion for a directed verdict, which the district court allowed. Paul then moved for administrative and litigation costs under 26 U.S.C. § 7430. The government opposed the motion, claiming that it was

substantially justified in taking the position that Paul was liable for Focus' tax deficiencies. The district court agreed with the government and denied the motion. Paul now seeks review of that denial.

## II. Discussion

We have not previously addressed the question of what standard of review applies to a district court's ruling on a motion for costs pursuant to 26 U.S.C. § 7430. We will follow our sister circuits and review the district court's determination that Paul was not entitled to costs under § 7430 for abuse of discretion. See, e.g., United States v. Bisbee, 245 F.3d 1001, 1007 (8th Cir. 2001); Wilkerson v. United States, 67 F.3d 112, 119 (5th Cir. 1995); Cooper v. United States, 60 F.3d 1529, 1531 (11th Cir. 1995); Awmiller v. United States, 1 F.3d 930, 930 (9th Cir. 1993); Wilfong v. United States, 991 F.2d 359, 364 (7th Cir. 1993); Pate v. United States, 982 F.2d 457, 459 (10th Cir. 1993).

A.         Statutory Framework

At the outset, we review the statutory framework relevant to this appeal.

         1.     26 U.S.C. §§ 3102, 3402, 6672

The Internal Revenue Code requires employers to withhold federal income taxes from their employees' wages. Slodov v. United States, 436 U.S. 238, 242-43 (1978); see 26 U.S.C. §§ 3102(a), 3402(a). The withheld sums are to be paid to the IRS on a

-8-

quarterly basis. <u>Slodov</u>, 436 U.S. at 243. "An employer who fails to pay taxes withheld from its employees' wages is . . . liable for the [unpaid] taxes . . . ." <u>Id.</u> Moreover, 26 U.S.C. § 6672(a) extends liability for unpaid taxes by providing:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

For purposes of § 6672(a), a "'person' . . . includes an officer or employee of a corporation . . . who . . . is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b). Thus, an employee may be liable under § 6672(a) if he (1) is a person who is "required to collect, truthfully account for, [or] pay over" the taxes (a "responsible person"),[7] and (2) "willfully" fails to do so. <u>See</u> <u>Thomsen</u> v. <u>United States</u>, 887 F.2d 12, 14 (1st Cir. 1989). An individual deemed liable under § 6672(a) bears the burden of proving that he was not a responsible person and does not meet the willfulness requirement. <u>Stuart</u> v. <u>United States</u>, 337 F.3d 31, 36 (1st Cir. 2003); <u>see</u> <u>Lubetzky</u> v.

---

[7]Although § 6672(a) "defines a responsible person as one who is 'required to collect, truthfully account for, <u>and</u> pay over any tax,' . . . the Supreme Court has interpreted the statute to apply to any person who has a duty to do any one of those things, <u>see</u> <u>Slodov</u>, 436 U.S. at 250 . . . ." <u>Vinick</u> v. <u>United States</u>, 205 F.3d 1, 7 n.6 (1st Cir. 2000) (emphasis added).

-9-

<u>United States</u>, No. 01-2357, 2004 WL 2997888, at *3 (1st Cir. Dec. 29, 2004).

There is no single factor that determines whether an individual is a responsible person.[8]  <u>Vinick</u>, 205 F.3d at 8. Indicia of responsibility include whether the individual:

> (1) is an officer or member of the board of directors, (2) owns shares or possesses an entrepreneurial stake in the company, (3) is active in the management of day-to-day affairs of the company, (4) has the ability to hire and fire employees, (5) makes decisions regarding which, when and in what order outstanding debts or taxes will be paid, (6) exercises control over daily bank accounts and disbursement records, and (7) has check-signing authority.[9]

<u>Id.</u> at 7 (citation omitted); <u>see</u> <u>Lubetzky</u>, 2004 WL 2997888, at *3. However, "the crucial inquiry is whether the person had the effective power to pay the taxes--that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed."  <u>Vinick</u>, 205 F.3d at 8 (internal quotation marks and citations omitted).  Therefore, the final three factors in the above list are the most significant

---

[8]Of course, "[t]here may be more than one responsible person." <u>Stuart</u>, 337 F.3d at 36.

[9]"Importantly, . . . authority to sign checks, without more, is a weak pillar on which to rest a liability determination that a person is properly subject to a . . . penalty under section 6672." <u>Vinick</u>, 205 F.3d at 10 (internal quotation marks and citation omitted).  A "court must look at the check-signing authority in the context of financial control."  <u>Id.</u>

"because [they] identif[y] most readily the person who could have paid the taxes, but chose not to do so."  Id. at 9.

To act willfully under § 6672, one "must have some knowledge of failure or risk of failure to remit the employment taxes."  Cooper, 60 F.3d at 1532; see Lubetzky, 2004 WL 2997888, at *3; Stuart, 337 F.3d at 36.

2.    26 U.S.C. § 7430

While § 6672 imposes liability for unpaid taxes, § 7430(a) establishes that an individual wrongly deemed liable under § 6672 for unpaid taxes may recover both his administrative and litigation costs.  Section 7430(a) provides:

> In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty . . . , the prevailing party may be awarded a judgment or a settlement for--
> (1) reasonable administrative costs incurred in connection with such administrative proceeding within the [IRS], and
> (2) reasonable litigation costs incurred in connection with such court proceeding.

Thus, to be eligible for an award of administrative costs, litigation costs, or both, an individual must establish that he is a "prevailing party."[10]  26 U.S.C. § 7430(a).  An individual is a

---

[10]An individual must also meet a number of additional requirements that we need not address to decide this case.  See, e.g., 26 U.S.C. §§ 7430(b)(1) ("A judgement for reasonable litigation costs shall not be awarded . . . unless . . . the prevailing party has exhausted the administrative remedies

"prevailing party" if he "has substantially prevailed with respect to the amount in controversy[] or . . . the most significant issue or set of issues presented," 26 U.S.C. § 7430(c)(4)(A)(i), and his "net worth did not exceed $2,000,000 at the time the civil action was filed," 28 U.S.C. § 2412(d)(2)(B); see 26 U.S.C. § 7430(c)(4)(A)(ii). However, even if these requirements are met, an individual "shall not be treated as the prevailing party . . . if the United States establishes that [its] position . . . in the proceeding was substantially justified." 26 U.S.C. § 7430(c)(4)(B)(i).[11]

The government's position in an administrative proceeding is its "position . . . as of the earlier of . . . the date of the receipt by the taxpayer of the notice of the decision of the [IRS] Office of Appeals, or . . . the date of the notice of deficiency."[12]

---

available . . . within the [IRS]."), 7430(b)(3) ("No award for reasonable litigation and administrative costs may be made . . . with respect to any portion of the administrative or court proceeding during which the prevailing party has unreasonably protracted such proceeding.").

[11]The government's "position . . . shall be presumed not to be substantially justified if the [IRS] did not follow its applicable published guidance in the administrative proceeding." 26 U.S.C. § 7430(c)(4)(B)(ii).

[12]The date of the notice of deficiency is the date on which the IRS formally assesses the penalty for nonpayment, not the date on which it issues its proposed assessment. Compare 26 U.S.C. § 7430(c)(7)(B) (referring to "the date of the notice of deficiency") with 26 U.S.C. § 7430(c)(2) (referring to "the date of the notice of deficiency" and "the date on which the first letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the [IRS] Office of Appeals is sent").

-12-

26 U.S.C. § 7430(c)(7)(B). The government's position in a judicial proceeding is its "position . . . at the onset of the litigation," <u>Nalle</u> v. <u>Comm'r of Internal Revenue</u>, 55 F.3d 189, 191 (5th Cir. 1995), and at "each [subsequent] stage of the case," <u>Huffman</u> v. <u>Comm'r of Internal Revenue</u>, 978 F.2d 1139, 1148 (9th Cir. 1992). A "position . . . is substantially justified if it has a reasonable basis in both law and fact, a determination made on a case by case basis." <u>Bisbee</u>, 245 F.3d at 1007. The government's loss in the underlying litigation is not determinative of whether its position was substantially justified. <u>See, e.g.</u>, <u>Nalle</u>, 55 F.3d at 192 ("[I]f at the onset of litigation the error was not obvious, the [government] may still be substantially justified in defending an ultimately unsuccessful position.").

B.      <u>Application of Facts to Law</u>

Paul claims that the district court erred when it denied his motion to recover the administrative and litigation costs he incurred after the IRS initially took the position that he was liable for Focus' unpaid taxes. The government, however, insists that the district court correctly found that because the government was substantially justified in rejecting Paul's challenge to the proposed assessment and in pursuing the litigation, Paul should not be treated as a prevailing party under § 7430 and, therefore,

should not be permitted to recover his costs.[13]  Thus, the question for us is did the district court abuse its discretion in finding that the government was substantially justified in taking, and in pursuing, the position that, for the first three quarters of 1992, Paul was a responsible person who willfully failed to pay Focus' taxes and, therefore, was liable for its tax liabilities under § 6672.

### 1.    Administrative Costs

On the record before us, we cannot say that the district court abused its discretion in finding that the IRS was substantially justified when it initially took the position that Paul was liable for Focus' tax deficiencies for the quarters in question.[14]  At that point, the IRS knew that Paul had full authority to disburse funds from Focus' bank accounts for the first two quarters in question and at least part of the third.[15]  In

---

[13]The government concedes that Paul has met the other prevailing party prerequisites.  See 26 U.S.C. §§ 7430(c)(4)(A)(i), 7430(c)(4)(A)(ii).

[14]The date the IRS Office of Appeals rejected Paul's challenge to the proposed assessment, June 28, 1996, is the relevant date for purposes of this appeal.  See supra note 12 and accompanying text.

[15]Even if, at the time in question, the IRS possessed evidence that Paul had relinquished his signatory authority during the third quarter (and it is not clear from the record that it did), that would not change our view as to the reasonableness of the district court's finding.  See Brown v. United States, 591 F.2d 1136, 1140 (5th Cir. 1979) ("[A]n . . . employee need not be responsible for the payment of withholding taxes at the end of the quarter in order to be a responsible person for that quarter.") (citing Slodov, 436 U.S. at 247).

addition, it knew that Paul had signed many of the checks Focus had issued during those quarters. Furthermore, the IRS did not then possess reliable evidence that Paul lacked authority to pay Focus' tax liabilities. Although, prior to the point at which the IRS took its position, Pottle had provided the agency with a statement in which he affirmed that he and George had complete authority over Focus' finances, Pottle had neglected to mention (and the IRS was aware) that, for much of the relevant period, Paul had the authority to disburse, and had disbursed, significant sums from Focus' bank accounts. Thus, Pottle's statement was of questionable probative value. The denial of Paul's request for administrative costs is affirmed. Cf. Bisbee, 245 F.3d at 1007 (noting that the IRS's position "is not reasonable where the agency is possessed of [compelling] evidence indicating that the [individual] had no authority to pay taxes"); Cooper, 60 F.3d at 1531-32 (same).

### 2. Litigation Costs

Similarly, the district court did not abuse its discretion when it decided that the government was substantially justified in (1) taking the position that Paul was liable under § 6672 for Focus' tax liabilities at the onset of the litigation and (2) refusing to abandon that position at the close of discovery.[16]

---

[16]We make this determination assuming that, both at the onset of litigation and at the close of discovery, the government possessed evidence that Paul had relinquished his signatory

At the onset of litigation, the information available to the government was the same as that which was available to the IRS when it initially took its position. The government knew that Paul had authority to disburse, and had disbursed, funds from Focus' accounts during the relevant quarters, and it did not then possess reliable evidence that Paul (1) lacked the authority to decide which of Focus' creditors were to be paid, see Vinick, 205 F.3d at 8 (To be a responsible person, one must have "the actual authority . . . to pay the taxes owed."), or (2) was not aware of Focus' tax liabilities, see Cooper, 60 F.3d at 1532 (To act willfully, one "must have some knowledge of failure or risk of failure to remit the employment taxes."). Cf. Sharp v. United States, 145 F.3d 994, 996 (8th Cir. 1998) (holding that the government's position was not substantially justified because "[n]ot only is it clear that [taxpayer] did not have the authority to pay the withholding taxes, it is also clear from the record that the government was aware of the limitations on [taxpayer's] authority before it filed its counterclaim"). Thus, the district court did not abuse its discretion in finding that the government was substantially justified in initially pursuing the litigation, particularly given that it was Paul's burden to prove that he was not a responsible

authority during the third quarter. See cases cited supra note 15. Furthermore, we recognize that it is not entirely clear that Paul stated the second of the two issues in the accompanying text to the district court. Nevertheless, for purposes of this appeal, we assume that the second issue was clearly stated.

person and did not meet the willfulness requirement, see Stuart, 337 F.3d at 36.

Although the government possessed additional information by the close of discovery--the deposition testimony of Paul and Pottle and Paul's affidavit, we do not think the district court abused its discretion in finding that the government was substantially justified in continuing to pursue the litigation. At his deposition, Paul stated that, throughout much of the relevant period, he could pay Focus' smaller bills without first obtaining approval from Pottle or George. Although Paul said that he could not pay Focus' larger bills without prior approval, he acknowledged that there were no "specific . . . criteria that [were] employed [to distinguish the smaller bills from the larger ones]." Paul also testified that he was involved in daily meetings with Pottle and George during which it was decided which of Focus' bills would be paid. And, Paul admitted that he was aware that Focus was not paying its taxes. Not only did Paul's statements fail to establish that he was not a responsible person of Focus,[17] they suggested that his actions would satisfy § 6672's willfulness requirement.

---

[17]Paul appears to argue that his testimony that "as the financial situation grew tighter, then virtually any bill and any creditor would have been paid in consultation with [] Pottle" made it clear that he was not a responsible person. But, all Paul said was that he paid "virtually any bill and any creditor . . . in consultation with [] Pottle" (emphasis added); he did not say that he could pay bills only if Pottle directed him to do so, and he did not say that he had no influence over the decision regarding which creditors would be paid and which would not.

Pottle's deposition testimony does not undermine the district court's finding of substantial justification. Although Pottle testified that Paul did not have the authority to make independent spending decisions, Pottle was not responsible for the day-to-day operations of, and spent little time in, the office in which Paul worked. Therefore, it was not evident that Pottle possessed sufficient actual knowledge to testify as to the scope of Paul's authority. Moreover, Pottle's testimony about the extent of Paul's authority was inconsistent with Paul's, and as a result, it was not unreasonable for the government to seek clarification of Paul's status within Focus at trial. Cf. Barton v. United States, 988 F.2d 58, 60 (8th Cir. 1993) ("[T]he Government could not reasonably rely on [limited management and supervisory powers and restricted signature authority] in the face of uncontradicted evidence that [taxpayer] had no authority over tax matters.").

Similarly, the existence of Paul's affidavit does not undermine the district court's finding. While Paul may have stated in the affidavit that he had no actual authority to pay Focus' taxes, he failed to explain why his representations in the affidavit were inconsistent with his deposition testimony, and he provided no evidentiary support for those representations. Thus, the government was entitled to test Paul's credibility at trial.

In view of all of the above, the district court's denial of Paul's request for litigation costs is affirmed.[18]

**Affirmed.**

---

[18]As a final matter, Paul argues that because the IRS failed to follow "applicable published guidance," IRS Policy Statement P-5-60, a presumption should have arisen that the government's position was not substantially justified. See 26 U.S.C. § 7430(c)(4)(B)(ii). The government maintains that Policy Statement P-5-60 was not "applicable published guidance" within the meaning of § 7430(c)(4)(B)(ii). We need not decide that issue, because the IRS's position was not inconsistent with the Policy Statement, which provides:

> Responsibility is a matter of status, duty, and authority. Those performing ministerial acts without exercising independent judgment will not be deemed responsible.
> In general, non-owner employees of the business entity, who act solely under the dominion and control of others, and who are not in a position to make independent decisions on behalf of the business entity, will not be asserted the trust fund recovery penalty.

At the relevant stages of the case, it was unclear whether Paul had the authority to pay the IRS and to what degree Paul was involved in the decision-making process concerning the payment of Focus' creditors. Therefore, Paul was not entitled to the presumption, and consequently, the district court did not err in refusing to apply it.

-19-