# United States Court of Appeals

## For the First Circuit

No. 04-2426

CECIL J. MOULTON,

Plaintiff/Counterclaim Defendant, Appellant,

v.

UNITED STATES OF AMERICA,

Defendant/Counterclaim Plaintiff, Appellee,

v.

GREGORY PRATT,

Counterclaim Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Patti B. Saris, U.S. District Judge]

Before

Lynch, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

Paul J. Dee, Jr., with whom Michael S. Marino and Truelove, Dee & Chase LLP were on brief, for appellants.
Teresa E. McLaughlin, Attorney, Tax Division, Department of Justice, with whom Robert J. Branman, Attorney, Tax Division, Department of Justice, Eileen J. O'Connor, Assistant Attorney General, and Michael J. Sullivan, United States Attorney, of counsel, were on brief, for appellee.

November 21, 2005

**LYNCH, <u>Circuit Judge</u>**.  The issue in this case is whether the district court abused its discretion in denying an award under 26 U.S.C. § 7430 of attorneys' fees and costs to two taxpayers, Cecil J. Moulton and Gregory Pratt, one of whom initiated the underlying lawsuit in this case.  The United States (the IRS) would be liable for such sums if it were not substantially justified in its earlier tax assessments, and in the underlying lawsuit in asserting counterclaims, against the two men as "responsible persons" liable under 26 U.S.C. § 6672 for the unpaid federal withholding taxes of a company with which they had been involved.

Moulton and Pratt were shareholders and officers of a company which failed to pay withheld income and FICA taxes for five quarters.  The government succeeded in holding them responsible for only one of the quarters; Moulton and Pratt won on the other four quarters.  Moulton and Pratt then sought their fees and costs for defense on those quarters.  Several of their arguments rest on a fundamental misreading of the standards set by this court for "responsible person" liability, and more particularly on a misreading of <u>Vinick</u> v. <u>Commissioner</u>, 110 F.3d 168 (1st Cir. 1997) ("<u>Vinick I</u>") and <u>Vinick</u> v. <u>United States</u>, 205 F.3d 1 (1st Cir. 2000) ("<u>Vinick II</u>").  We clarify and affirm.

## I. Background

William Glick founded B.G. Enterprises, Inc. in 1993. The company, which did business as Spectrum Thin Films, made

specialized coatings for computer chips, glass, and auto trims. The company did not survive for long, and its assets were sold in 1997.

Glick recruited Cecil Moulton, Gregory Pratt, and two others to invest in his company. From January 1994 through November 1996, the Board of Directors, which met monthly, consisted of these five stockholders.

Among them, the shareholders and directors held a variety of offices. From April 1993 through December 1996, Glick was the President and Chief Executive Officer of B.G. He was also the Chairman of the Board until November 1994, when Pratt succeeded to that position.[1] Pratt had become Vice President earlier in 1994, after Glick had a heart attack. Moulton was B.G.'s Treasurer and Secretary.

By 1995, if not earlier, B.G. began to have difficulty paying its taxes. It negotiated a payment plan with the IRS, but even with that modified schedule, it began to fall behind in October 1995. B.G. entered a tailspin, accumulating large debts. The Board employed a variety of unsuccessful measures, which we do not detail here, and Glick quit as President and CEO. Eventually the company wound down. Its assets were sold in March 1997, and the proceeds went to Pratt, leaving B.G. with at least one unpaid

---

[1] Pratt remained in the position of Chairman through March 1997.

creditor: the United States government. All told, the company had failed to pay withheld income and FICA taxes for the last quarter of 1995 and all four quarters of 1996.

In late 1999, the government assessed the unpaid taxes against Moulton, Pratt, and Glick as "responsible persons," pursuant to 26 U.S.C. § 6672. It assessed all three of the men for all four quarters of 1996, and it assessed Pratt and Glick for the last quarter of 1995 as well.[2] Moulton and Pratt contested liability, pointing the finger at Glick instead. Moulton paid just over $100 to the IRS and, in February 2001, filed administrative claims for a refund and requests for abatement. When the IRS had not taken any action on his refund and abatement claims by October, Moulton filed suit in the district court. The government counterclaimed, seeking the amount still unpaid on Moulton's assessment for 1996 -- over $24,000. It also impleaded Pratt and Glick as counterclaim defendants, seeking the amount that remained unpaid on the assessments against them -- over $31,000 each, as the two had been assessed for the last quarter of 1995 in addition to all of 1996.[3]

The district court held a bench trial on November 10 and 13, 2003. On December 8, it issued a Memorandum and Order

_____

[2] Moulton was also originally assessed for the last quarter of 1995, but the IRS abated that assessment in full.

[3] Glick defaulted.

concluding that "Moulton and Pratt exercised significant control over the financial affairs of B.G. in the fourth quarter of 1996, and are responsible persons under the totality of the circumstances for that quarter." The court also concluded that "[w]ith respect to the earlier quarters, the evidence does not support the government's claim that they were engaged in day-to-day management." Citing Vinick I and Vinick II, the court stated that "[o]ccasional involvement in business affairs is insufficient to create liability" and emphasized that even though Moulton and Pratt both had check-writing authority for some quarters during 1994 and 1995, "no taxes were overdue in those quarters." The court stated that "[t]here is scant to no evidence of actual exercise of control in 1995 or the first two tax periods of 1996." It acknowledged that there was "some evidence of an increasing role in financial management in the third quarter [of 1996]," but not enough to persuade it that Moulton and Pratt "could have paid the taxes at that time." The court ordered entry of judgment in favor of the government for the fourth quarter of 1996.

On March 9, 2004, Moulton and Pratt moved under 26 U.S.C. § 7430 for an award of their reasonable litigation costs.[4] On March 29, the district court denied this motion. The order stated,

---

[4] The statute defines "reasonable litigation costs" to include "court costs," "expenses of expert witnesses," and attorneys' fees, provided all of these expenditures are reasonable. 26 U.S.C. § 7430(c)(1).

in its entirety: "Denied as premature.  In addition, [Moulton and Pratt] were not prevailing parties for one quarter and the government had a reasonable basis for the action."

On April 20, the court entered judgment.  On July 19, 2004, after entry of judgment, Moulton and Pratt again filed a motion for an award of litigation costs under 26 U.S.C. § 7430.[5] They fared no better than they had before.  The district court denied the motion on August 13, 2004.  Its order was succinct: "The government's position was substantially justified.  This was a close case."  Moulton and Pratt now appeal from this order denying the application under § 7430.[6]

## II. Discussion

We review for abuse of discretion the district court's determination that a taxpayer is or is not entitled to costs under 26 U.S.C. § 7430.  See Jean v. United States, 396 F.3d 449, 453 (1st Cir. 2005).

Under § 7430, reasonable administrative and litigation costs, including attorneys' fees, "may be awarded" to the "prevailing party" in any proceeding involving "the determination, collection, or refund of any tax, interest, or penalty" under the

---

[5] They sought four-fifths of their attorneys' fees, representing the fractional amount as to which they had succeeded at trial.

[6] Neither side appeals from the underlying determination of responsibility for one but not all of the quarters in question.

-6-

Internal Revenue Code. 26 U.S.C. § 7430(a). Under § 7430(c)(4)(A), a "prevailing party" is defined as any party who has "substantially prevailed with respect to the amount in controversy" or "the most significant issue or set of issues presented."

There is a key exception which poses the issue here: "A party shall not be treated as the prevailing party . . . if the United States establishes that the position of the United States in the proceeding was substantially justified." Id. § 7430(c)(4)(B)(i). The government's "position . . . is substantially justified if it has a reasonable basis in both law and fact, a determination made on a case by case basis." Jean, 396 F.3d at 455 (omission in original) (quoting United States v. Bisbee, 245 F.3d 1001, 1007 (8th Cir. 2001)).

Moulton and Pratt argue on appeal that the government's position that they were responsible for B.G.'s tax debts during the first four quarters in question was not substantially justified. Their argument rests, in part, on a misunderstanding of two aspects of this circuit's law on responsible person liability.

## A. Standard for Liability as a "Responsible Person"

"The Internal Revenue Code ('Code') requires employers to withhold federal social security and income taxes from the wages of their employees and to remit the amounts withheld to the United States." Stuart v. United States, 337 F.3d 31, 35 (1st Cir. 2003)

(citing 26 U.S.C. §§ 3102(a), 3402(b)).  The amounts withheld are held in trust for the United States; the employer must report the amounts quarterly, and "is liable for them from the time the wages are paid."  Thomsen v. United States, 887 F.2d 12, 14 (1st Cir. 1989) (citing 26 U.S.C. § 7501).  Further, the Code "imposes personal liability not only upon employers but upon their officers and agents who are responsible for collecting, accounting for, and paying over to the government the taxes withheld."  Id.  The provision for personal liability is set forth in 26 U.S.C. § 6672, which states, in part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

Id. § 6672(a).[7]

Moulton and Pratt argue that the government's counterclaim alleging that they were responsible persons (for the quarters as to which they were held not liable) was not substantially justified.  One of their primary arguments is that to be deemed responsible, a person must have actually exercised -- and not simply possessed -- authority to pay creditors.  This theory

_____

[7] Moulton and Pratt stipulated that if they were "responsible persons," their failure to collect and pay over taxes was willful.

-8-

rests on a misreading of a phrase, plucked out of context, from Vinick II. The passage in Vinick II on which Moulton and Pratt rely stated that "[a]bsent a finding that [the taxpayer] possessed actual, exercised authority over the company's financial matters, including the duty and power to determine which creditors to pay, as a matter of law [the taxpayer] cannot be a responsible person." 205 F.3d at 15. Moulton and Pratt argue that Vinick II changed the law of this circuit, which previously had not adopted "actual exercise" as a requirement. They claim that "the United States deliberately ignored the 'exercised authority' standard in Vinick," which replaced "the First Circuit's standard prior to Vinick." Not so. Vinick II itself repeatedly cited, and adhered to, the standards set in our earlier cases -- Vinick I, 110 F.3d 168; Thomsen, 887 F.2d 12; Caterino v. United States, 794 F.2d 1 (1st Cir. 1986); and Harrington v. United States, 504 F.2d 1306 (1st Cir. 1974). See Vinick II, 205 F.3d 1 passim.

A series of decisions before and after Vinick II, and indeed Vinick II itself, have made clear that "[t]he controlling inquiry in determining whether the taxpayer should be held 'responsible' is whether the person possessed sufficient control over corporate affairs to avoid the default." Stuart, 337 F.3d at 36 (citing Vinick I, 110 F.3d at 172). "Courts have explicitly given the word 'responsible' a broad interpretation." Caterino, 794 F.2d at 5. Elaborating on the many factors pertinent to this

inquiry, this court has cited various "[i]ndicia of responsibility," including "the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees." Thomsen, 887 F.2d at 16 (citations omitted); see also Stuart, 337 F.3d at 36 (same).

More to the point, it has long been the law in this circuit that "delegation will not relieve one of responsibility; liability attaches to all those under the duty set forth in the statute." Harrington, 504 F.2d at 1311. This principle was reiterated in Thomsen, which stated that the fact that the taxpayer's business partner "agreed to accept full responsibility for managing the company's financial affairs did not render [the taxpayer] any the less responsible to pay withheld taxes to the government." 887 F.2d at 17. Vinick II followed the holdings of Thomsen and Harrington. See Vinick II, 205 F.3d at 4, 8, 11, 13.

Indeed, Vinick II stated quite clearly that the "crucial inquiry is whether the person had the 'effective power' to pay the taxes -- that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed," id. at 8 (emphasis added) (quoting Barnett v. IRS, 988 F.2d 1449, 1454 (5th Cir. 1993)), and the decision set forth a multi-

factor test[8] which did not require actual exercise of authority as a sine qua non.  See id. at 7.  As we said in Lubetzky v. United States, 393 F.3d 76 (1st Cir. 2004):

> [T]he case law criteria . . . provide a framework.  These indicia are said to include whether the defendant is a member of the board or an officer, has a stake in the company, is active in management and personnel decisions, makes decisions as to payment of bills, controls bank accounts, and has check-signing authority.  Vinick II also said of this list that corporate title is not decisive, and that the last three criteria are particularly important.

Id. at 80 (citations omitted) (citing Vinick II, 205 F.3d at 7-9). Vinick II nevertheless left open the possibility that a person who did not exercise authority but, for example, had actual authority and delegated or ignored it, could be found liable under the statute.

The language in Vinick II that Moulton and Pratt misread simply refers back to specific facts in that case.  Taken in

---

[8] Vinick II stated that "[t]he inquiry focuses on whether the individual":
> (1) is an officer or member of the board of directors, (2) owns shares or possesses an entrepreneurial stake in the company, (3) is active in the management of day-to-day affairs of the company, (4) has the ability to hire and fire employees, (5) makes decisions regarding which, when and in what order outstanding debts or taxes will be paid, (6) exercises control over daily bank accounts and disbursement records, and (7) has check-signing authority.

205 F.3d at 7 (quoting Fiataruolo v. United States, 8 F.3d 930, 939 (2d Cir. 1993)).

-11-

context, the language simply cannot be read as saying that a person must have exercised a particular form of authority to be held responsible. See id. (citing Vinick II for the proposition that the "responsible person" inquiry is governed by a "laundry list of criteria" tied to a "concept of power or control").

**B. Limitation on Facts That May Be Used to Prove Liability**

Moulton and Pratt misunderstand not only the legal framework under which taxpayers may be held liable, but also the evidence to which the government may point -- and to which the district court may give consideration. Citing Vinick I and Vinick II, they argue that this court has, "on more than one occasion, limited this entire [§ 6672] analysis to a period-by-period review." Their argument suggests that evidence outside a particular quarter may not be used to establish liability for that quarter. Such a rule would not be sensible and is not the law of this circuit.

Vinick I analyzed the evidence of responsibility on a quarter-by-quarter basis, but did so against a backdrop of evidence of activities over a ten-year period. 110 F.3d at 170-72. Vinick II stated that "the central question in determining whether a taxpayer is a responsible person is whether he had the power to pay the taxes during the quarters in question," 205 F.3d at 10, that the "inquiry . . . should focus on the taxpayer's activities during the quarters in question," id. at 10 n.7, and that

-12-

"[r]esponsibility during one period does not equate to responsibility in all periods," id. at 11.  But a footnote in Vinick II expressly rejected Moulton and Pratt's reading of this language:

> We do not mean to suggest that in all § 6672 cases a district court is precluded from considering evidence from outside the quarters in question.  For example, behavior in one quarter, depending on the circumstances, could cast light on one's status as a responsible person in other quarters.  Because one's function and status can change between quarters, however, it would be erroneous based solely on evidence from one quarter automatically to conclude that a person is responsible in another quarter.

Id. at 11 n.8.

## C. Abuse of Discretion

With this clarification of the law, it is evident that the district court did not abuse its discretion in determining that the government's position was substantially justified.  This was, as the district court observed, a "close case."  The closeness of this case was compounded by the fact that, once the IRS assessed Moulton and Pratt under § 6672, the burden of proof was on them to prove that they were not responsible persons (or that, if they were responsible, their failure to ensure that the taxes were paid was not "willful").  See Jean, 396 F.3d at 454 (citing rule putting burden of proof on taxpayer assessed under § 6672); Lubetzky, 393 F.3d at 80; Stuart, 337 F.3d at 36 (citing Caterino, 794 F.2d at 5).  Jean emphasized this factor in holding that "the district

-13-

court did not abuse its discretion in finding that the government was substantially justified in initially pursuing the litigation." 396 F.3d at 457; see also id. (stating that "it was not unreasonable for the government to seek clarification . . . at trial" of taxpayer's potential responsibility).

Moulton and Pratt argue that the district court's determination under § 7430 was "intellectually inconsistent" with its findings of fact and conclusions of law under § 6672.  They claim that during the periods in question, they not only did not exercise or delegate the requisite authority, but in fact did not possess it.[9]  The district court found otherwise, stating that Glick was Moulton and Pratt's "delegee" and that "their failure over many months to sanction him constitutes a ratification of his conduct."

Moulton and Pratt would have us give decisive weight to the fact that they did not have signatory authority over B.G.'s operating account at Fleet Bank.  But it would be contrary to our law to make one factor outcome-determinative.[10]

---

[9] They claim that they held their offices "in title only" and without possessing the powers of those offices as enumerated in B.G.'s bylaws, and that as mere Board members, neither possessed authority over B.G.'s financial affairs.

[10] We note that Moulton and Pratt make this argument while at the same time decrying the government's supposed attempt to make certain other factors dispositive.  They suggest that the government sought to hold them liable solely because of their status as shareholders, officers, and directors.  The government, in fact, did no such thing; it asserted other reasons besides each

-14-

The district court found facts that support several of the indicia of responsibility. For instance, both Moulton and Pratt had check-signing authority over an account at Centerpoint Bank for substantial lengths of time. The court also found that "Moulton presented the financials to the Board at every meeting," "was responsible for proposing B.G.'s operating budget," and "was responsible for the corporation's funds." For a time during the summer of 1994, Moulton "exercised actual financial control" and "assumed control of many of the daily operations, including check-writing."

There was no abuse of discretion in the district court's determination that the government was substantially justified in taking the position that Moulton and Pratt were responsible persons even before the final quarter of 1996. The district court's order denying Moulton and Pratt's motion under 26 U.S.C. § 7430 is **affirmed**. Costs of appeal are awarded to the United States.

taxpayer's status and title.