# United States Court of Appeals
## For the First Circuit

No. 02-1702

JOSEPH V. STUART,
Plaintiff, Appellant,

v.

UNITED STATES,
Defendant/Third-Party-Plaintiff, Appellee,

FRANKLIN O'DELL,
Third-Party Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella and Howard, Circuit Judges.

David E. Neitlich, for appellant.
Bethany B. Hauser, Attorney, Tax Division, Department of
Justice, with whom Eileen J. O'Connor, Assistant Attorney General
and Teresa E. McLaughlin, Attorney, were on brief, for appellee.

July 24, 2003

**TORRUELLA**, **Circuit Judge**.  Plaintiff-appellant Joseph Stuart ("Stuart" or "Taxpayer") brought suit in district court seeking a refund of federal taxes and penalties he paid to the Internal Revenue Service for the unpaid trust fund taxes of Buyers Business Network ("BBN").  The district court granted partial judgment in favor of the IRS with regard to the correctness of the amounts of the assessments at issue.  The remaining issue of whether Stuart could be held liable for BBN's debt was then tried to a jury, which rendered special verdicts finding for the IRS on all counts.  Stuart appeals.  After careful consideration, we affirm.

## I.  BACKGROUND

### A.  Entities at Issue

Stuart is an experienced businessman who held interests in numerous operations, including dry cleaning, jewelry, insurance, restaurant, and publishing businesses.  In 1984, he semi-retired, and in 1989, after he had a heart attack, he transferred his assets to his wife.

In 1992, Stuart advised his family on the creation of Maynard Mall Realty Trust ("MMRT") to purchase the physical plant of the Maynard Mall in Massachusetts.  Local building contractor Thomas Sheridan was the trustee, with Sheridan and three of Stuart's children as beneficiaries.  Stuart also advised his wife and children in forming Combined Financial, Inc., a corporation

-2-

which held interests in a number of businesses located within the Maynard Mall and provided financing for some of these businesses. Stuart's son Greg was originally the president of Combined Financial, but Stuart became president at some point before the end of the fourth quarter in 1993, the first of the four quarters involved in the suit.

BBN was a Maynard Mall tenant. BBN brokered the exchange of goods and services between small and medium-sized businesses in return for a commission. Franklin O'Dell, BBN's president, previously operated a barter company called Bottomline Business Exchange of New Hampshire ("BBX New Hampshire") with Ralph Butts. Steve Lichtman and Kevin Dowd had been operating another barter business in Medford and then at the Maynard Mall known as Bottomline Business Exchange of Medford ("BBX Medford"). In December, 1992, O'Dell and Butts agreed with Lichtman, Dowd, and Combined Financial to consolidate BBX New Hampshire and BBX Medford at the Maynard Mall as BBN, an 80 percent subsidiary of Combined Financial. The four men owned equal shares of the remaining 20 percent.

In 1993, O'Dell learned that former BBX Medford had been in serious financial trouble when it entered the merger, and he told Stuart of the problem. O'Dell and Stuart held a meeting with Lichtman and Dowd, and a new agreement was executed on March 5, 1993. Among other things, the new agreement eliminated Lichtman

and Dowd from BBN ownership and authorized Combined Financial to intervene in BBN's financial affairs under certain circumstances, such as if BBN was fiscally imbalanced or mismanaged.

Stuart became a signatory on BBN's bank account on November 22, 1993, at which time BBN owed Combined Financial over $400,000.  Two signatures were required on any check for more than $250, and all ten checks Stuart signed for more than $250 were countersigned by either O'Dell or Robert Minka, Combined Financial's comptroller.

## B.  Assessments

BBN filed form 941 --  "Employer's Quarterly Federal Tax Returns" -- for the fourth quarter of 1993 and the first quarter of 1994.  These returns were signed by O'Dell as BBN's president.  The 1993 return shows total wages paid of $67,745.49, with taxes due of $16,551.04; the 1994 return shows total wages paid of $42,302.50, with taxes due of $10,639.41.  By 1997, unpaid balances of assessment of trust fund taxes (payroll taxes) remained -- $11,597.97 for the fourth quarter of 1993 and $7,403.23 for the first quarter of 1996.  The IRS then made assessments of $19,001.20 against Stuart and O'Dell because the IRS found that they had sufficient control over BBN's finances to be held personally responsible for BBN's withholding tax liability under I.R.C. § 6672 (2000).

BBN did not file a return for the second or third quarters of 1994. For the missing quarters, the IRS used BBN's past returns to prepare substitute returns under I.R.C. § 6020(b), based on an estimated payroll of $42,492.91. The IRS then made assessments of $23,498.58 against Stuart and O'Dell. The IRS retained and applied against the assessments overpayment credits which the IRS owed Stuart and O'Dell, resulting in the balance due on the assessment being reduced to $730.94.

## C. Litigation Below

The IRS denied Stuart's claim for a refund of the penalties he paid to the IRS, leading Stuart to bring suit in federal district court. The Government counterclaimed for the balance of assessments due and impleaded O'Dell. At the close of discovery, the Government moved for partial summary judgment regarding the amounts assessed. Stuart also moved for summary judgment, contending that the assessment for the second and third quarters of 1994 was invalid because the amounts of the tax liabilities for those quarters was estimated. In response, the Government submitted Certificates of Assessments and Payments as proof that the assessments were presumptively valid. The Government also filed a motion in limine to exclude testimony of IRS personnel regarding the validity of the substitute returns.

The district court denied Stuart's motion for summary judgment and granted the Government's motion for partial summary

-5-

judgment and its motion in limine.  The issue of whether Stuart was a responsible person who willfully failed to remit the trust fund taxes to the IRS went to trial.  The jury returned special verdicts for the Government on all counts, finding Stuart both responsible and willful as to all four tax quarters at issue.  Stuart then filed a motion for a new trial.  The district court denied the motion, and Stuart appeals.

## II.  CHALLENGE TO AMOUNTS ASSESSED

### A.  Standard of Review

We review the district court's legal interpretations de novo; we "overturn its factual findings only if they are clearly erroneous."  Interex v. Comm'r, 321 F.3d 55, 58 (1st Cir. 2003).

### B.  Analysis

Stuart contends that the district court erred by favoring IRS assessments with a presumption of correctness because the underlying substitute returns were without factual foundation, constructed based upon an irrational theory, unauthorized, and facially inconsistent.

Stuart's argument is without legal support.  The IRS presented Certificates of Assessments and Payments for the fourth quarter of 1993 and the first three quarters of 1994, which are "presumptive proof of a valid assessment."  Geiselman v. United States, 961 F.2d 1, 6 (1st Cir. 1992) (per curiam).  This presumption places the burden of proof on Stuart to show that the

IRS's determination is invalid. Helvering v. Taylor, 293 U.S. 507, 515 (1935); accord Interex v. Comm'r, 321 F.3d at 58. A determination is invalid if it is "without rational foundation and excessive." United States v. Janis, 428 U.S. 433, 441 (1976) ((finding that a naked assessment made without any foundation cannot be used to calculate an assessment because it was "without rational foundation and excessive and not properly subject to the usual rule with respect to the burden of proof in tax cases") (citations omitted)); accord Interex v. Comm'r, 321 F.3d at 58.

Stuart did not carry his burden. Instead of presenting credible evidence that the assessments were without foundation, Stuart asserts only that the assessments are without foundation simply because they are based on substitute returns. However, taxpayers have a duty to maintain adequate records for tax reporting purposes. I.R.C. § 6001. Where a taxpayer fails to keep such records, "the government, in attempting to establish a violation of the income tax law, may reconstruct a taxpayer's taxable base by any reasonable method." United States v. Morse, 491 F.2d 149, 151 (1st Cir. 1974); accord Cracchiola v. Comm'r, 643 F.2d 1383, 1385 (9th Cir. 1981); United States v. Firtel, 446 F.2d 1005, 1006-07 (5th Cir. 1971) (per curiam). Here, the substitute returns were based upon a figure slightly lower than the payroll figures submitted by BBN for the last quarters for which it did file a return. Stuart argues that these amounts may be high

because the payroll of a failing business may decline before the business ceases all operations. Stuart's assertion may well be correct, but he has not produced any records or other corroborating evidence to show that this actually occurred at BBN. Consequently, Stuart has failed to demonstrate that the Certificates of Assessments and Payments were not reasonable.

### III.  ATTACK ON JURY VERDICTS

#### A.  Taxpayer Responsibility

The Internal Revenue Code ("Code") requires employers to withhold federal social security and income taxes from the wages of their employees and to remit the amounts withheld to the United States. I.R.C. §§ 3102(a), 3402(b). "The Code [] imposes personal liability not only upon employers but upon their officers and agents who are responsible for collecting, accounting for, and paying over to the government the taxes withheld." Thomsen v. United States, 887 F.2d 12, 14 (1st Cir. 1989); see I.R.C. § 6672(a). When a person required to collect, account for, and pay over trust fund taxes willfully fails to do so, he is liable for a penalty equal to the total amount of the unpaid taxes. I.R.C. § 6672(a).

The taxpayer bears the burden of proving both that he was not a responsible person and that his failure to pay over the taxes was not willful. See Caterino v. United States, 794 F.2d 1, 5 (1st Cir. 1986). There may be more than one responsible person.

-8-

Harrington v. United States, 504 F.2d 1306, 1312 (1st Cir. 1974). "Courts have explicitly given the word 'responsible' a broad interpretation." Caterino, 794 F.2d at 5 (citation omitted). The controlling inquiry in determining whether the taxpayer should be held "responsible" is whether the person possessed sufficient control over corporate affairs to avoid the default. Vinick v. Comm'r, 110 F.3d 168, 172 (1st Cir. 1997). "In deciding whether an assessed individual is a 'responsible person' under 26 U.S.C. § 6672(a)[], federal courts typically consider various indicia of responsibility, such as the holding of corporate office, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees." Adams v. Coveney, 162 F.3d 23, 26 n.1 (1st Cir. 1998).

"Willfulness for purpose of section 6672 means no more than knowledge that taxes are due and withheld and conscious disregard of the obligation to remit them." Caterino, 794 F.2d at 6. "Evil motive and specific intent are not necessary elements," id., and "delegation will not relieve one of responsibility," Harrington, 504 F.2d at 1311. A responsible person acts willfully if, after becoming aware that the trust fund taxes are not being paid, knows that other creditors are receiving payment or acts in "reckless disregard of a known or obvious risk" that trust funds may not be remitted to the government. Thomsen, 887 F.2d at 17-18.

Stuart states that the standard "effective power" or "significant control" tests for the "responsible person" prong of section 6672 liability are faulty "because there is no limit to the number of degrees of removal which the power and control tests may bridge," leading to Stuart being held personally liable when he has only a very tenuous and indirect formal connection to BBN.

We reject as unfounded Stuart's attack on the standard tests used to determine section 6672 liability. As discussed above, the court's analysis looks beyond titles to ascertain whether the employee had substantial control over corporate finances. Vinick, 110 F.3d at 172. In determining the employee's amount of control, courts eschew a mechanical system and consider a multitude of factors to prevent holding an employee liable where she did not have power to avoid the default. See Caterino, 794 F.2d at 5.

### B. Sufficiency of the Evidence

Stuart contends that the jury had insufficient evidence to find him a "responsible person" who acted willfully in not remitting the payroll tax. Stuart did not move for a judgment as a matter of law at the close of the evidence. "When a litigant has foregone a timely motion for judgment as a matter of law, the court of appeals normally will not consider the legal sufficiency of the evidence." Faigin v. Kelly, 184 F.3d 67, 76 (1st Cir. 1999); see also 9A Wright & Miller § 2536 (2003) (noting "[i]t is thoroughly

established that the sufficiency of the evidence is not reviewable on appeal unless a motion for judgment as a matter of law was made in the trial court"). We will only review the insufficiency of the evidence in a case of "plain error apparent on the face of the record that, if not noticed, would result in a manifest miscarriage of justice" or where "the verdict is totally without legal support." 9A Wright & Miller § 2536; see Faigin, 184 F.3d at 76 (stating "the court of appeals retains a modicum of residual discretion to inquire whether the record reflects an absolute dearth of evidentiary support for the jury's verdict").

In the case before us, not only is plain error absent, the record contains ample evidence to support jury findings of willfulness and responsibility under the Code. Consequently, we dismiss Stuart's sufficiency of the evidence arguments.

### C. **Attack on Verdict**

Stuart preserved his right to seek relief from the verdict by making a motion for a new trial, which the trial court denied. We review a denial for a motion for a new trial under an abuse of discretion standard, in which "[w]e reverse only if the verdict is so seriously mistaken, so clearly against the law or the evidence, as to constitute a miscarriage of justice." Transamerica Premier Ins. Co. v. Ober, 107 F.3d 925, 929 (1st Cir. 1997). (quotation marks and citation omitted). We review the district

court's denial of a new trial for abuse of discretion, and view the evidence in the light most favorable to the nonmoving party. Id.

The jury's verdicts were not against the great weight of evidence. In fact, there was substantial evidence from which the jury could infer that under the Code Stuart was a responsible person who acted willfully in failing to remit the payroll taxes.

For example, while Stuart was not an officer, director or shareholder of BBN, the jury could have inferred Stuart had the requisite control of BBN because Combined Financial was BBN's 80% shareholder, and Stuart served as president and then as a director of Combined Financial. The jury also could have considered Stuart to be the true owner of Combined Financial and the Maynard Mall. Although Stuart transferred his assets to his wife and children, there was evidence that he retained actual control. For example, he made the decision to buy the Maynard Mall building and testified that his wife, the formal owner of Combined Financial's interest in BBN, was unaware of who owned stock in Combined Financial.

The jury could also have inferred that Stuart exerted significant managerial control over BBN's affairs. While Stuart claimed little involvement in BBN's operations, O'Dell testified Stuart was at the Maynard Mall five to six days per week and attended regular Monday meetings. Stuart was involved in the negotiation of the new BBN Agreement, which gave Combined Financial

-12-

the power to direct BBN's financial affairs if the business was not properly managed.

As to willfulness, the jury could have inferred that Stuart acted willfully in not ensuring that BBN's taxes were paid by coupling Minka's testimony that Stuart knew the payroll taxes had not been paid with Stuart's failure to show that he investigated or corrected the mismanagement. Alternatively, the jury could have inferred willfulness from testimony that Stuart knew that other creditors, such as Combined Financial and Maynard Mall, were being paid even though the payroll taxes had not been paid. Consequently, we find that the district court did not abuse its discretion in denying Stuart a new trial.[1]

## IV. CONCLUSION

For the reasons stated above, we **affirm**.

---

[1] Stuart argued in part below that the verdict was against the clear weight of the evidence because of the district court's allegedly erroneous and prejudicial ruling granting the Government's motion in limine to exclude testimony of IRS personnel regarding the validity of the substitute returns. However, Stuart forfeits his opportunity to appeal this issue because he failed to make an attempt to develop this argument in his brief. Twomey v. Delta Airlines Pilots Pension Plan, 328 F.3d 27, 33 n.4 (noting that issues alluded to perfunctorily without any developed argument are deemed waived on appeal).