# United States Court of Appeals
## For the First Circuit

No. 14-2179

RICHARD SCHIFFMANN,

Plaintiff/Counterclaim Defendant, Appellant,

v.

UNITED STATES OF AMERICA,

Defendant/Counterclaim Plaintiff, Appellee,

v.

STEPHEN CUMMINGS,

Counterclaim Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Lynch, Selya and Kayatta,
Circuit Judges.

David R. Sullivan, with whom Murtha Cullina LLP was on brief, for appellants.
Douglas C. Rennie, Attorney, Tax Division, U.S. Department of Justice, with whom Caroline D. Ciraolo, Acting Assistant Attorney General, Joan I. Oppenheimer, Attorney, Tax Division, and Peter F. Neronha, United States Attorney, were on brief, for appellee.

January 29, 2016

**SELYA**, **Circuit Judge**.  The obligation of a corporate employer to pay payroll taxes is familiar.  The Internal Revenue Code requires employers to withhold federal income taxes from employees' wages and to hold such taxes in trust for the United States.  See 26 U.S.C. §§ 3102, 3402, 7501.  As a result, such taxes are often referred to as trust fund taxes.  See id. § 7501.  If they are not paid to the government when and as required, the Internal Revenue Service (IRS) may look past the corporate form and hold officers of the corporation personally liable under certain circumstances.  See id. § 6672(a).

The court below, in sequential summary judgment rulings, concluded that the appellants, Richard Schiffmann and Stephen Cummings, were responsible persons who had wilfully caused ICOA, Inc. (ICOA) to shirk its payroll tax obligations.[1]  The appellants challenge this conclusion.  After careful consideration, we affirm.

## I.  BACKGROUND

The raw facts are largely undisputed.  ICOA is a Rhode Island corporation, whose subsidiaries provide wireless internet services in public spaces (such as airports and marinas).[2]  As far

---

[1]  In its earliest filings, the government misspelled Schiffmann's name (omitting the final "n").  For ease in reference, we use the correct spelling throughout.

[2] We use ICOA as a collective shorthand for ICOA and its various subsidiaries.  One of those subsidiaries, WebCenter

back as 2002, ICOA began struggling to stay current on federal trust fund tax obligations.

Schiffmann became ICOA's president in October of 2004 and retained that title after becoming its chief executive officer (CEO) in April of 2005. Cummings (previously a consultant to the company) became ICOA's chief financial officer (CFO) in October of 2005. At the latest, the appellants discovered the full extent of ICOA's outstanding trust fund tax liabilities shortly after Cummings became CFO. They nonetheless signed checks to pay other creditors, but did not pay the government. The funds backing these checks came primarily from cash infusions raised by Schiffmann and ICOA's board chairman, George Strouthopoulos (Schiffmann's predecessor as CEO). On November 18, 2005, the ICOA board of directors (which then consisted of at least four members) met to discuss, among other things, the outstanding trust fund tax liabilities. By resolution, the board granted check-signing authority to ICOA's officers on a schedule depending on debt amount and officer rank. Schiffmann, as CEO, was given singular signing authority for checks up to $100,000; Cummings, as CFO, was given singular signing authority for checks up to $75,000. Matters went downhill from there: the trust fund tax arrearage was not paid, new trust fund taxes accumulated, the company's financial decline

---

Technology, Inc., serves as the paymaster for the ICOA family of companies.

continued, and the board fired Schiffmann and Cummings in June of 2006.

Failing to receive payment following notice and demand, the IRS made trust fund recovery penalty assessments against, inter alia, Schiffmann and Cummings.[3] The IRS proceeded to seize what funds it could find. For his part, Schiffmann filed an unsuccessful refund and abatement request. He then repaired to the federal district court and sought both to recover the sums previously seized from him and to nullify the assessments. See 26 U.S.C. § 7422.

The government counterclaimed against Schiffmann, Cummings, and others,[4] seeking to recover the remainder of the overdue taxes and penalties. In response, Cummings counterclaimed

---

[3] In those penalty assessments, the IRS alleged that, as of March 2014, Schiffmann owed close to $400,000 plus interest for nearly five full quarters beginning April 1, 2005 and ending June 23, 2006. The IRS further alleged that, as of the same date, Cummings owed more than $250,000 plus interest for nearly three full quarters beginning October 1, 2005 and ending June 23, 2006.

[4] For the sake of completeness, we note that two other corporate officers, George Strouthopoulos and Erwin Vahlsing, were named in the government's counterclaims. Since neither of them is a party to this appeal, we do not further discuss the government's counterclaims against them.

Additionally, we note that as to parties other than Schiffmann, the government's counterclaims were technically cross-claims. See 6 Charles Alan Wright et al., Federal Practice and Procedure § 1432, 285 (3d ed. 2010). Nevertheless, the parties and the district court called them counterclaims, and so will we.

against the government, seeking to nullify the assessments against him.

In due course, the government moved for summary judgment on its counterclaims. The motion was accompanied by the required statement of material facts not in dispute. See D.R.I. R. 56(a)(2). Schiffmann and Cummings opposed summary judgment, but neither of them submitted a counterstatement of disputed facts. See id. R. 56(a)(3). The district court entered summary judgment for the government. See Schiffmann v. United States, No. 12-695, 2014 WL 1394199, at *11 (D.R.I. Apr. 9, 2014).

The government next moved for summary judgment on the claims asserted by Schiffmann and Cummings, respectively. Once again, its motion was accompanied by the requisite statement of undisputed facts. See id. R. 56(a)(2). Schiffmann and Cummings opposed the motion, this time submitting the required statement of disputed facts. See D.R.I. R. 56(a)(3). The district court granted the government's second summary judgment motion, see Schiffmann v. United States, No. 12-695 (D.R.I. Oct. 3, 2014) (unpublished order), and later entered a final judgment to include sums certain (awarding the government $394,334.28 plus interest against Schiffmann and $254,280.82 plus interest against Cummings). This timely appeal ensued.

**II. ANALYSIS**

In granting summary judgment, the district court determined that, as a matter of law, Schiffmann and Cummings were both responsible persons who had acted wilfully in not paying ICOA's trust fund taxes. See 26 U.S.C. § 6672. We subdivide our discussion of the appellants' assignments of error into three segments.

### A. The Legal Landscape.

As a general matter, liability under section 6672(a) attaches when a "person required to collect, truthfully account for, and pay over" trust fund taxes "willfully fails" to do so. This stricture may apply to a corporate officer who is a "responsible person." See Thomsen v. United States, 887 F.2d 12, 14 (1st Cir. 1989); Caterino v. United States, 794 F.2d 1, 3 (1st Cir. 1986). For this purpose, "responsible person" is a term of art: a person within a company who has a duty to collect, account for, or pay over trust fund taxes. See 26 U.S.C. § 6671(b); Vinick v. United States (Vinick II), 205 F.3d 1, 7 (1st Cir. 2000). For any particular corporation, there may be more than one responsible person. See Harrington v. United States, 504 F.2d 1306, 1312 (1st Cir. 1974).

Such a determination entails consideration of a corporate officer's status, duties, and authority. See Lubetzky v. United States, 393 F.3d 76, 78-80 (1st Cir. 2004). The inquiry

focuses on the "function of an individual in the employer's business, not the level of the office held." Caterino, 794 F.2d at 5. The criteria that typically inform the determination (sometimes known in this circuit as the Vinick II factors) include whether the person is an officer and/or director; whether the person owns shares or otherwise has an equity interest in the company; whether the person participates actively in day-to-day management of the company; whether the person has authority to hire and fire; whether the person "makes decisions regarding which, when, and in what order outstanding debts or taxes will be paid"; whether the person exercises significant superintendence over bank accounts and disbursement records; and whether the person is endowed with check-signing authority. Vinick II, 205 F.3d at 7. Though this list is not meant to be exhaustive and no one factor is dispositive, see Jean v. United States, 396 F.3d 449, 454 (1st Cir. 2005), debt prioritization, control over bank accounts, and check-signing authority are at the "heart of the matter" because they "identif[y] most readily the person who could have paid the taxes, but chose not to do so." Vinick II, 205 F.3d at 9.

The bottom line, of course, is the extent of the officer's decisionmaking authority. The ultimate question is whether the officer "had the 'effective power' to pay the taxes — that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed."

Moulton v. United States, 429 F.3d 352, 356 (1st Cir. 2005) (quoting Vinick II, 205 F.3d at 8) (emphasis in original); see Stuart v. United States, 337 F.3d 31, 36 (1st Cir. 2003) (focusing on "whether the person possessed sufficient control over corporate affairs to avoid the default").

Responsibility is determined on a quarter-by-quarter basis. See Vinick v. Comm'r of Internal Revenue (Vinick I), 110 F.3d 168, 172 (1st Cir. 1997). Thus, responsibility during one quarter does not equate to responsibility in all quarters. See Vinick II, 205 F.3d at 11.

A finding that an individual is a "responsible person" is necessary, but not sufficient, to ground liability for unpaid trust fund taxes. The government also must show that a responsible person acted wilfully in failing to see to the payment of the taxes. In this context, acting wilfully requires "knowledge that taxes are due and withheld and conscious disregard of the obligation to remit them." Stuart, 337 F.3d at 36 (quoting Caterino, 794 F.2d at 6). Wilfullness may be manifested as a "voluntary, conscious and intentional decision to prefer other creditors to the United States." Harrington, 504 F.2d at 1311. Neither a specific intent to cheat the government nor an evil motive is required. See Caterino, 794 F.2d at 6. "[I]t is enough if a defendant knows that the taxes are due from the company and

yet disburses funds for other purposes or knowingly fails to pay the required sum to the government."  Lubetzky, 393 F.3d at 80.

**B.  The First Grant of Summary Judgment.**

Against this backdrop, we turn to the district court's granting of the government's first summary judgment motion.  We review the entry of summary judgment de novo.  See Gomez v. Stop & Shop Supermkts. Co., 670 F.3d 395, 396 (1st Cir. 2012).  In conducting this tamisage, we read the record in the light most hospitable to the nonmoving parties (here, the appellants) and draw all reasonable inferences in their favor.  See id.  Summary judgment is appropriate where the record reflects no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a).

In this instance, our review is channeled by the posture of the case.  The local rules of the United States District Court for the District of Rhode Island provide in pertinent part:

(a) Statement of Undisputed Facts.

(1) In addition to the memorandum of law required by [Local Rule of Civil Procedure] 7, a motion for summary judgment shall be accompanied by a separate Statement of Undisputed Facts that concisely sets forth all facts that the movant contends are undisputed and entitle the movant to judgment as a matter of law.

(2) The Statement of Undisputed Facts shall be filed as a separate document with the motion and memorandum.  Each "fact" shall be set forth in a separate, numbered paragraph and shall

- 10 -

identify the evidence establishing that fact, including the page and line of any document to which reference is made, unless opposing counsel has expressly acknowledged that the fact is undisputed.

(3) For purposes of a motion for summary judgment, any fact alleged in the movant's Statement of Undisputed Facts shall be deemed admitted unless expressly denied or otherwise controverted by a party objecting to the motion. An objecting party that is contesting the movant's Statement of Undisputed Facts shall file a Statement of Disputed Facts, which shall be numbered correspondingly to the Statement of Undisputed Facts, and which shall identify the evidence establishing the dispute, in accordance with the requirements of paragraph (a)(2).

D.R.I. R. 56(a)(1)-(3). In connection with the first summary judgment motion, neither appellant filed a statement of disputed facts as required by D.R.I. R. 56(a)(3).

This failure has consequences. "Valid local rules are an important vehicle by which courts operate" and "carry the force of law." Air Line Pilots Ass'n v. Precision Valley Aviation, Inc., 26 F.3d 220, 224 (1st Cir. 1994). The appellants' failure meant that all of the facts set forth in the government's statement of undisputed facts were deemed admitted. See D.R.I. R. 56(a)(3); see also Nieves-Romero v. United States, 715 F.3d 375, 377 (1st Cir. 2013).

The facts contained in the statement of material facts that accompanied the government's first summary judgment motion plainly showed that each appellant was a responsible person, who

- 11 -

acted wilfully in failing to pay trust fund taxes. As to Schiffmann, the government sought to hold him responsible for nearly five full quarters beginning April 1, 2005 and ending June 23, 2006 (when he was cashiered). Throughout this interval, Schiffmann was ICOA's president and CEO. He also served as a director and owned stock in the company. As such, he was deeply involved in the day-to-day management of ICOA; his functions included the power to hire and fire, the development of fundraising strategies, and the formulation of a retention and compensation plan for ICOA's workforce. Furthermore, he was a signatory on ICOA's bank accounts, and regularly signed checks. Last but not least, in November of 2005 the board adopted a resolution specifically authorizing him to sign financial and contractual obligations up to $100,000 without a second signature.

There is no question but that Schiffmann's status as CEO and the wide range of his functions afforded him the kind of significant suzerainty over ICOA's affairs to avoid defaulting on taxes. See Stuart, 337 F.3d at 36; Godfrey v. United States, 748 F.2d 1568, 1575 (Fed. Cir. 1984). To cinch the matter, Schiffmann's deep-seated involvement in the financial affairs of the company, including his power over ICOA's bank accounts and payroll, and his check-signing authority, gave him "'effective power' to pay the taxes." Vinick II, 205 F.3d at 8 (quoting Barnett v. IRS, 988 F.2d 1449, 1454 (5th Cir. 1993)). After all,

- 12 -

he had funds at his disposal and the power to allocate them. He was, therefore, a "responsible person" within the purview of section 6672(a).

The undisputed facts likewise dictate a finding of wilfulness on Schiffmann's part. Schiffmann acted wilfully because — after becoming aware that the trust fund taxes were not being paid — he did not lift a finger to pay them. Instead, he allowed the company to use unencumbered funds to pay other creditors. Given Schiffmann's position and authority, no more was exigible to undergird a finding of wilfullness. See Jean, 396 F.3d at 454; Thomsen, 887 F.2d at 16-18.

To be sure, Schiffmann argues that he did not learn specifically or in detail about ICOA's outstanding trust fund tax liabilities until, at the earliest, October of 2005. But the fact that he did not contemporaneously know of ICOA's failure to pay trust fund taxes in earlier quarters does not matter: it is settled law that when a responsible person realizes that trust fund taxes have not been paid for prior quarters in which he was a responsible person, he is under a duty to use all unencumbered funds available to the company to satisfy those tax arrearages. See Erwin v. United States, 591 F.3d 313, 326 (4th Cir. 2010); United States v. Kim, 111 F.3d 1351, 1357 (7th Cir. 1997); Mazo v. United States, 591 F.2d 1151, 1157 (5th Cir. 1979). That rule applies in this situation: Schiffmann was a responsible person during all the

- 13 -

quarters at issue (after all, he was president and CEO of ICOA from April of 2005 through June of 2006), and ICOA had unencumbered funds at his disposal during the second and third quarters of 2005 and thereafter.

The government's statement of undisputed material facts also supports the conclusion that Cummings was a responsible person who wilfully avoided paying ICOA's trust fund taxes for the period beginning October 1, 2005, and ending June 23, 2006 (when he, too, was fired). As said, Cummings became CFO of ICOA on October 25, 2005. He served in that capacity for the rest of the period in question; owned stock in ICOA; was a signatory on two of the company's principal bank accounts; and enjoyed check-signing authority up to $75,000.00 without a second signature. Tasked to manage ICOA's financial health and develop appropriate fiscal policies, he had access to all of the company's financial records, including tax and payroll records. He decided which outstanding bills to pay, and in what order. He was, therefore, a responsible person who could have paid ICOA's taxes. See Jean, 396 F.3d at 454; Caterino, 794 F.2d at 6 ("Congress has chosen to impose responsibility on one who has the ability to determine whom a company will or will not pay.").

It cannot be gainsaid that Cummings acted wilfully. He knew that the corporation had hefty trust fund tax liabilities accumulated over a period of years. The expertise he had gained

- 14 -

as an IRS field auditor makes manifest that he surely must have understood the extent of his fiduciary obligation with respect to these liabilities. Yet, following the meeting in which the board gave him the power to sign checks and contractual obligations up to $75,000, he exercised that power to pay rent and operational expenses. The company's tax liabilities went begging. So viewed, Cummings voluntarily, consciously, and intentionally preferred other creditors to the United States. See Harrington, 504 F.2d at 1311.

We summarize succinctly. On the record as it stood at the time of the first summary judgment ruling, there was no genuine issue as to any material fact. Both Schiffmann and Cummings were responsible persons during the relevant quarters. Each of them acted wilfully in failing to pay ICOA's overdue and current trust fund taxes with unencumbered funds and in prioritizing other creditors over the government. Consequently, the district court did not err in granting the government's first motion for summary judgment.

### C. The Second Grant of Summary Judgment.

The government's second summary judgment motion, like the first, was accompanied by a separate statement of material facts not in dispute. See D.R.I. R. 56(a)(2). This time, however, the appellants' opposition included a counterstatement of disputed material facts. See id. R. 56(a)(3). Both of these statements

must be taken into account in analyzing the second summary judgment ruling. Even so, most of the salient facts adduced by the government in connection with the first summary judgment motion remain uncontradicted.

To begin, the appellants' counterstatement does little to undermine the facts, recounted above, showing that Schiffmann and Cummings were responsible persons who wilfully failed to see to the payment of trust fund taxes. The counterstatement does, however, contain some further facts that the appellants suggest should alter the decisional calculus. We briefly explore the appellants' four additional arguments.

First, the appellants claim that ICOA's funds were largely encumbered and, thus, unavailable for tax payments. But this claim lacks any meaningful support in the record. In this context, funds are deemed encumbered only if the taxpayer is legally obligated to use them for some purpose other than the satisfaction of a preexisting or current trust fund tax liability and that obligation is superior to the IRS's interest in the funds. See Nakano v. United States, 742 F.3d 1208, 1212 (9th Cir.), cert. denied, 134 S. Ct. 2680 (2014). The burden is on the responsible person to identify disputed facts sufficient to raise a genuine issue about whether funds used to pay other creditors were encumbered. See Conway v. United States, 647 F.3d 228, 237 (5th Cir. 2011).

Here, the record contains no facts sufficient to show the existence of such a legal obligation: ICOA received capital infusions of more than $500,000 while Cummings was its CFO and received capital infusions of more than $900,000 while Schiffmann was CEO. It also received a steady stream of revenue from its business operations. The appellants have not adduced any significantly probative evidence sufficient to support a finding that all or any substantial part of these funds were encumbered by obligations superior to the obligation owed to the IRS. Contrary to the appellants' importunings, funds are not encumbered simply because corporate officers elect to earmark them informally for specific purposes (such as payroll or trade debts). See Bradshaw v. United States, 83 F.3d 1175, 1180 (10th Cir. 1995); Kalb v. United States, 505 F.2d 506, 510 (2d Cir. 1974).

Second, the appellants attempt to draw a distinction between technical power (that is, the board resolution authorizing them to make disbursements) and actual power (that is, what actually happened in the workplace). We rejected this very argument in Moulton, in which we explained that technical power versus actual power constitutes a false dichotomy. See 429 F.3d at 355-56 (collecting cases). The correct legal standard extends liability to anybody "with responsibility and authority to avoid the default which constitutes a violation of the statute." Harrington, 504 F.2d at 1312. Here, the record shows beyond hope

of contradiction that each appellant had both the responsibility and the authority to pay ICOA's trust fund taxes.

The appellants' third plaint is that the board of directors limited their check-signing authority by directing that it not be used to pay taxes. The record, however, belies this claim. There is no such limitation on the face of the resolution adopted by the board of directors. Though two of the directors may have voiced the sentiment during the November 2005 board meeting that any payment of taxes should be further deferred, a majority of the directors expressed no such views. At any rate, voicing a sentiment is not the same as adopting a resolution by a majority vote. Cf. R.I. Gen. Laws, §§ 7-1.2-801(a), 806 (stipulating that a majority of a corporation's board of directors is required to confer authority to act upon a corporate officer).

Fourth, and finally, the appellants argue that they were subordinate to the wishes of the board of directors, so neither of them had the final word about which creditors got paid and which did not. But the fact that someone in the corporate hierarchy may outrank a corporate officer does not shield that officer from section 6672 liability. In that context, liability depends on significant, not exclusive, control over the disbursement of funds. See Hochstein v. United States, 900 F.2d 543, 547 (2d Cir. 1990); Caterino, 794 F.2d at 5-6; Neckles v. United States, 579 F.2d 938, 940 (5th Cir. 1978). What counts in this case is that,

- 18 -

given the totality of the circumstances, the only reasonable view of the evidence is that each appellant possessed and exerted significant control over ICOA's corporate finances and could have paid the IRS more money had he been of a mind to do so.

Again, we summarize succinctly. On the full record, there is no genuine issue as to any material fact. Both Schiffmann and Cummings were responsible persons during the relevant quarters, and each of them acted wilfully in failing to see to the payment of ICOA's overdue and current trust fund taxes. Consequently, the court below did not err in granting the government's second motion for summary judgment.

## III.  CONCLUSION

We need go no further. For the reasons elucidated above, the judgment of the district court is

**Affirmed.**