# United States Court of Appeals
## For the First Circuit

No. 15-2214

UNITED STATES OF AMERICA,

Plaintiff, Appellee,

v.

MARCI McNICOL, a/k/a MARCI REITANO, individually,

Defendant, Appellant.

ESTATE OF ROBERT REITANO and MARCI McNICOL,
as Executrix of the ESTATE OF ROBERT REITANO,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before
Thompson, Selya and Kayatta,
Circuit Judges.

James E. Hoyt, with whom Hoyt Legal, LLC was on brief, for appellant.
Curtis C. Pett, Attorney, Tax Division, United States Department of Justice, with whom Caroline D. Ciraolo, Acting Assistant Attorney General, Richard Farber, Attorney, Tax Division, and Carmen M. Ortiz, United States Attorney, were on brief, for appellee.

July 15, 2016

**SELYA**, **Circuit Judge**.    This appeal requires us to construe and apply 31 U.S.C. § 3713 (commonly known as the federal priority statute).  We conclude that the statute says what it means and means what it says.  Since the court below accorded the statute its plain meaning and applied it in that manner, we affirm that court's entry of judgment in favor of the United States.

## I. BACKGROUND

We start with a sketch of the factual background and travel of the case.  Robert Reitano died in July of 2002, survived by his wife (appellant Marci McNicol) and four minor children.  At the time of his death, Reitano owed over $340,000 in unpaid federal income tax liabilities.  Since these liabilities exceeded the value of his estate, the estate was insolvent.

The assets of the estate consisted almost entirely of stock in two corporations: Sophia Gale, Inc. (100% owned by Reitano's estate) and RR Fishing Corp. (50% owned by Reitano's estate and 50% owned by the appellant).  Each corporation owned a fishing vessel as its sole asset, and the value of the stock in each corporation was coextensive with the value of that vessel.

On July 30, 2002 — shortly after Reitano's death — the appellant transferred the Sophia Gale shares to herself.  The appellant was appointed executrix of Reitano's estate in January of the following year and, on April 11, she transferred the RR shares to herself.  These share transfers were effected without

consideration and, when the appellant effected them, she was admittedly aware of Reitano's unpaid tax debts.

Later in 2003, the Internal Revenue Service (IRS) completed its assessment of taxes, penalties, and interest owed by Reitano's estate. That assessment totaled $342,538.93. The IRS contacted the appellant about this debt and, in October of 2003, formally submitted a probate claim.

Nothing was paid, and in November of 2006, the IRS again contacted the appellant. The parties attempted to resolve the matter, but negotiations stalled: in 2008, the appellant told the IRS that she would no longer cooperate. The IRS countered by serving the appellant with a formal notice of potential liability under the federal priority statute. See 31 U.S.C. § 3713(b).

In due course, the government repaired to the United States District Court for the District of Massachusetts and sued Reitano's estate and the appellant, both individually and in her capacity as executrix of the estate. Its two-count complaint sought both to reduce to judgment the estate's unpaid federal tax liability and to secure judgment against the appellant, personally, for transferring assets of the estate to herself without first paying the estate's federal tax debts.

After some preliminary skirmishing (not relevant here), the parties cross-moved for summary judgment. The district court granted the government's motion and denied the appellant's cross-

motion.  The claim against the estate and against the appellant as executrix was essentially uncontested: no one challenged the government's assessment of the amount owed.  The claim against the appellant, in her individual capacity, was contested. With respect to that claim, the district court concluded that the appellant was liable up to the value of the transferred assets.

The appellant moved for reconsideration of the award against her in her individual capacity.  The district court summarily denied that motion and thereafter entered a judgment holding the estate and the appellant as executrix liable for $351,218.98, and holding the appellant, individually, liable for $125,938.[1]  This timely appeal followed.  In it, the appellant challenges only the district court's entry of summary judgment against her personally.  Neither the estate nor the appellant qua executrix has appealed.

## II.  ANALYSIS

We review a district court's entry of summary judgment de novo.  See Schiffmann v. United States, 811 F.3d 519, 524 (1st Cir. 2016).  In conducting this review, we take the facts and all reasonable inferences therefrom in the light most hospitable to

---

[1]  The amount of the judgment against the appellant, individually, was derived by adding the price for which the vessel owned by Sophia Gale, Inc. was eventually sold ($80,000) and one-half of the price for which the vessel owned by RR Fishing Corp. was eventually sold ($107,500), and subtracting the amount of a lien against the latter vessel ($61,562).

the nonmoving party (here, the appellant). See id. Summary judgment is appropriate as long as the record reflects no genuine issue of material fact and demonstrates that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Schiffmann, 811 F.3d at 524.

Here, our review is channeled by the district court's local rules, which provide in pertinent part:

> Motions for summary judgment shall include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation. Failure to include such a statement constitutes grounds for denial of the motion. . . . A party opposing the motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation. . . . Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties.

D. Mass. R. 56.1. Here, the government complied with this rule. The appellant, however, spurned it.

With respect to the appellant's opposition to the government's motion, she did not file "a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried." So, too, with respect to her cross-motion for summary judgment, she failed to file "a concise statement of the material facts of record as to which the moving

- 5 -

party contends there is no genuine issue to be tried." These failures have consequences. See Schiffmann, 811 F.3d at 525; see also Air Line Pilots Ass'n v. Precision Valley Aviation, Inc., 26 F.3d 220, 224 (1st Cir. 1994) (explaining that "[v]alid local rules are an important vehicle by which courts operate" and "carry the force of law"). It follows that, for purposes of these motions, the facts set forth in the government's statement of undisputed facts are deemed admitted.

Against this backdrop, we turn to 31 U.S.C. § 3713. This statute directs that "[a] claim of the United States Government shall be paid first when the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor." 31 U.S.C. § 3713(a)(1)(B). Refined to bare essence, the statute grants a largely unqualified priority of payment for claims due to the United States from either an insolvent debtor or the estate of a deceased debtor having insufficient assets to pay all debts. See United States v. Vermont, 377 U.S. 351, 357 (1964) (noting that the federal priority statute "on its face permits no exception whatsoever").

It is clear beyond hope of contradiction that the federal priority statute imposes personal liability on representatives of an estate who fail to honor a priority claim of the government. See 31 U.S.C. § 3713(b); United States v. Moore, 423 U.S. 77, 81 (1975) (explaining that "Congress gave the priority [statute]

- 6 -

teeth by making the administrator of any insolvent or decedent's estate personally liable for any amount not paid the United States because he gave another creditor preference").  Section 3713(b) therefore ensures that those who control the assets of a debtor's estate bear full responsibility for adhering to the government's priority.  See King v. United States, 379 U.S. 329, 337 (1964).

The personal representative of a debtor's estate is liable under section 3713(b) as long as three requirements are satisfied.  See United States v. Renda, 709 F.3d 472, 480-81 (5th Cir. 2013); United States v. Coppola, 85 F.3d 1015, 1020 (2d Cir. 1996).  A party seeking relief from such personal liability bears the burden of showing that these requirements (or, at least, one of them) have not been satisfied.  See Bramwell v. U.S. Fid. & Guar. Co., 269 U.S. 483, 487 (1926).  We rehearse these requirements.

First, the personal representative must have transferred assets of the estate before paying a claim of the United States. See Renda, 709 F.3d at 481.  Liability may attach even if the transferred funds were not used to pay a debt; the dispositive question is whether the personal representative "depleted the assets of . . . [the] estate by distributing them to" herself or others.  Coppola, 85 F.3d at 1020.

The second and third requirements — insolvency and notice — do not appear in the text of section 3713(b).

Nevertheless, courts have routinely read these requirements into the statutes to soften what would otherwise be a strict liability regime. See, e.g., Renda, 709 F.3d at 480 & nn.9-10.

The insolvency requirement demands that an indebted estate be insolvent at the time that the personal representative effects a transfer of assets. See id. at 480. The notice requirement demands that the personal representative must have had "knowledge of the debt owed by the estate to the United States or notice of facts that would lead a reasonably prudent person to inquire as to [its] existence." Coppola, 85 F.3d at 1020.

In this case, the district court concluded that all three requirements for section 3713(b) liability were satisfied. This conclusion finds solid footing in the record. The acknowledged facts unambiguously demonstrate that the appellant effected asset transfers by distributing virtually all of the assets of Reitano's estate to herself; that the estate was insolvent at the time of these transfers because its unpaid federal income tax liabilities far exceeded the value of the estate's assets; and that the appellant was aware of the unpaid tax liabilities when she effected the transfers. No more is exigible for a finding of section 3713(b) liability.

Faced with this inhospitable terrain, the appellant serves up a salmagundi of reasons why she should not be subject to section 3713(b) liability at all or, alternatively, why she should

be subject to such liability only in a lesser sum.  Her primary argument starts with the premise that certain types of expenses associated with administering an estate may be entitled to precedence over the government's tax claims.  Building on this premise, she insists that she used the transferred assets to pay such administrative expenses and, therefore, she is entitled to an equitable exception.  In her view, we would be "exalt[ing] form over substance" and "ignor[ing] the equities and the law" were we to hold her liable under section 3713(b).

We do not gainsay that a personal representative of an estate that is indebted to the United States for unpaid taxes may nonetheless use estate assets to defray certain types of expenses without contravening the statutory priority.  The IRS itself acknowledges that there are exceptions to the priority created by section 3713(a) for family allowances and administrative expenses (such as "expenses incurred for the general welfare of creditors," "expenses incurred to collect and preserve assets," court costs, and funeral expenses).  See Internal Revenue Manual, 34.4.1.7 (Aug. 11, 2004).  The case law reinforces this view.  See Estate of Jenner v. C.I.R., 577 F.2d 1100, 1106 (7th Cir. 1978); Schwartz v. C.I.R., 560 F.2d 311, 314 n.7 (8th Cir. 1977); Abrams v. United States, 274 F.2d 8, 12 (8th Cir. 1960).

Despite this promising provenance, however, the appellant's argument for an equitable exception fails.  Even if we

assume that an equitable exception to the priority statute may exist — a matter on which we take no view — the appellant's prospects would not improve.

As a threshold matter, the summary judgment record flatly contradicts the appellant's assertion that she transferred the stock to herself for the purpose of paying administrative expenses of the estate. The government's statement of undisputed material facts — which controls here, see D. Mass. R. 56.1 — makes pellucid that:

> Ms. McNicol deliberately chose to not liquidate the Estate and pay the tax debts owed to the United States. Ms. McNicol chose not to sell the two fishing vessels because she wanted to maintain the lucrative income that the vessels had been generating and use that income to fund her family's lifestyle. Ms. McNicol hoped that the IRS would not seek to collect the liabilities and that the statute of limitations period would expire.

Beyond this hurdle, a further impediment remains. Though the appellant itemizes various expenses in support of her contention, the documents offered to show that the appellant paid these expenses are unauthenticated hearsay. See Fed. R. Evid. 801, 901; see also Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998) (explaining that "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment"). Manifestly, then, the appellant failed to present competent evidence sufficient to make out a genuine issue of material fact with respect to the government's summary judgment

motion.  That failure is fatal to the argument that she now seeks to advance.[2]  See Torres v. E.I. DuPont de Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000); Garside v. Osco Drug, Inc., 895 F.2d 46, 49-50 (1st Cir. 1990).

The appellant musters three other arguments.  None of them requires extensive comment.

First, the appellant asserts that she cannot be held liable for the value of the Sophia Gale stock because she had not been appointed executrix at the time of the transfer and, thus, lacked the authority to transfer the stock.  This assertion, however, was not made below, and it is therefore waived.  See Snyder v. Collura, 812 F.3d 46, 51 (1st Cir. 2016); see also Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) ("If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal.").  We add, moreover, that even if this argument were not waived, it

---

[2] The appellant also composes a variation on this theme: she suggests that she transferred the stock to herself to "reimburse herself for having paid all of the administrative expenses."  But this "reimbursement" theory was not preserved below: it surfaced for the first time in the appellant's motion for reconsideration, so it is waived.  See Dillon v. Select Portf. Serv'g, 630 F.3d 75, 80 (1st Cir. 2011) ("When a party makes an argument for the first time in a motion for reconsideration, the argument is not preserved for appeal.").

would fail: whether the appellant had been appointed executrix at the time the assets were transferred is not determinative in the section 3713(b) analysis. What counts is whether the responsible party had control over the transferred assets, see King, 379 U.S. at 337, and it is nose-on-the-face plain that the appellant had such control from and after the date of Reitano's demise.

Next, the appellant attempts to raise a factual issue regarding the value of the shares that she transferred to herself. This attempt, however, comes too late. The appellant clearly stated the value of the shares in her answers to the government's interrogatories. A party is ordinarily bound by her unambiguous and unamended answers to interrogatories. See, e.g., Calhoun v. United States, 591 F.2d 1243, 1246 (9th Cir. 1978); cf. Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed."). There is nothing in the record that so much as hints at any valid basis for relieving the appellant from the strictures of this obligation.

Finally, the appellant seeks a $10,000 credit against her section 3713(b) liability for a sales commission that she allegedly incurred in selling one of the fishing vessels. Once

again, however, the document proffered to support the appellant's claim comprises unauthenticated hearsay and, therefore, is without any weight in the summary judgment calculus.  See Torres, 219 F.3d at 18; Garside, 895 F.2d at 49-50.

In this case, all roads lead to Rome: the district court did not err in granting the government's motion for summary judgment.

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, the judgment of the district court is


**Affirmed.**